George W. Linn Co. v. Harris.

## George W. Linn Company v. J. W. Harris.

### Gen. No. 11,466.

1.  FINDING OF COURT—*when, not disturbed on appeal.* Where the testimony is wholly oral and conflicting and irreconcilable, the Appellate Court will not, in the absence of error, disturb the finding of the trial court.

2.  ACCORD AND SATISFACTION—*when, established.* Where a claim is not disputed and a check in settlement is offered and accepted, which,

upon its face, recites that it is to be in full settlement, an accord and satisfaction results; and this notwithstanding the payee in such check was not able to read.

Action of assumpsit.    Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding.    Heard in the Branch Appellate Court at the October term, 1903.    Reversed.    Opinion filed January 20, 1905.    Rehearing denied February 7, 1905.

J. MARION MILLER, for appellant.

WHITE, MABIE & CONKEY, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee recovered judgment in the Circuit Court for a balance of the purchase price for 565 cases of eggs, which it is claimed were sold and delivered by appellee to appellant.

It is contended in behalf of appellant that before the suit was brought there was a settlement and adjustment between the parties of the matter in controversy, which should be deemed conclusive.

It appears there was a dispute between the parties as to the number of cases of eggs shipped by appellee to appellant. The former claimed to have shipped to the latter 640 cases. It is conceded, however, that the total shipment was 565 cases. Appellant claims that a large portion of the eggs were "culled," and that upon examination many of these were found to be bad. Before the eggs were received appellant paid $1,000 on account. Subsequently, as appellant claims, after many of the eggs were found to be worthless, they were "candled," that is, examined by the aid of a light, and in view of what the examination is said to have developed, appellant June 4, 1901, sent a check for $301.68 to appellee payable to the order of the latter, which stated on its face that it was "to balance account." This was retained and collected by appellee, but he wrote appellant that he did not accept it "as being in full payment for all these eggs" but would get it cashed and give credit, as he needed the money. Appellant insists, however, that by collecting and retaining the proceeds of the check, appellee

accepted it in accordance with its terms as balancing the account to that date. It is, however, unnecessary to inquire whether, under the circumstances such would have been the effect of appellee's conduct in reference to that particular check, inasmuch as the alleged settlement was subsequently waived by appellant. Twenty days later, June 24, 1901, appellee came to Chicago, called on appellant, and the matter was reopened. It was shown by shipping receipts that appellant had received at least fifty cases more than appellee had been given credit for, and appellant then agreed to and did pay for them, its treasurer telling appellee, as he testifies, "I will give you a check for these fifty cases and we will call it square. In other words you give us credit for about one hundred cases;" to which he testifies appellee replied, "All right; you go and make out a check and we will call it square and I will see if I can't get some money out of them down there. I suppose they will do what is right." Appellee on the other hand denies that any such settlement was made. He states that no complaint was made to him about the eggs and he never heard that appellant made any objection on that account until at the trial; that the only question in dispute was the number of cases shipped; and that when he received the check of that date—June 24—it was given in payment for the fifty cases, and appellant's treasurer said that if he owed appellee for any more eggs he would pay for them. The conflict of testimony is therefore direct and irreconcilable, and were there no documentary evidence, we should not feel disposed to interfere with the finding of the trial court against appellant on that issue. But the check given to appellee in payment for the fifty cases is in evidence and is as follows: "Chicago, June 24th, 1901. Pay to the order of J. W. Harris ($157.50) one hundred and fifty-seven and fifty one-hundredths dollars in full settlement of account to date. George W. Linn Co., Geo. L. Linn, treasurer. To Union Trust Co., Chicago." It is endorsed on the back " J. W. Harris, J. H. White & Co. Paid." Appellee accepted the check, collected the amount it called

for and has retained it. That by so doing under ordinary circumstances, a payee agrees to and is bound by the terms and conditions stated in the check, is well settled. The payee is at liberty to refuse to accept the check in "full settlement of account to date," and in the case at bar appellee might have returned it and sued, as he has done, to recover the whole amount claimed to be due him. But by accepting the check and taking the money it called for, he acquiesced in the condition and received it in accordance with its terms "in full settlement of account to date." Lapp v. Smith, 183 Ill. 179–183; Ostrander v. Scott, 161 Ill. 339–344; Michigan Leather Co. v. Foyer, 104 Ill. App. 268; McDaniels v. Bank, 29 Vt. 230–235. The payee cannot retain the check and proceeds, and evade or modify the condition without the maker's consent, by notifying the drawer in writing that although he retains and collects the check he refuses to accept the condition. If he wishes to refuse the condition he must return the check or its proceeds. It is claimed, however, that appellee could not read or write, that the check was not read to him, that he hurriedly cashed it after banking hours, and he testifies in rebuttal that he did not sign his name on the back and does not know who did; that he did not know the check was drawn "in full settlement of account." He received the money on it, however, and did not return nor offer to return it. If he did not know what the check contained it does not appear to have been the fault of any one but himself. He testifies that he had been in business buying eggs and grain for sixteen years and had done a great deal of figuring, although he says he cannot read nor write. If we accept appellant's testimony, appellee was told when he received it that the check was in full settlement to that date. If we accept appellee's statement, he accepted and cashed it ignorant of the condition in question. The fact remains, however, that the condition was clearly expressed on the face of the check, and that appellee has collected and retains the money it called for. It was within his power, and in the exercise of reasonable

care was his duty, to have ascertained the contents of the check, as he might readily have done by asking those who cashed it for him, or any one else, to read it to him. So far as appears he made no effort to ascertain, and he must be held to have known what it was his business to have known before he finally accepted and cashed it. The check must be deemed to have been given to and accepted by appellee in full settlement of account and he cannot be heard now to deny the condition. Yeomans v. Lane, 101 Ill. App. 228–235, and cases there cited.

A motion is pending to strike appellee's brief from the files. It contains without doubt matter which the court cannot consider as evidence, even though it might have been deemed important if it had been introduced in evidence, and its weight not shaken by cross-examination or rebutting evidence. But the record controls before appellate tribunals, and extraneous matter has no proper place in the briefs. The other grounds upon which the motion is based are insufficient, and it is denied.

For the reasons indicated the judgment of the Circuit Court must be reversed.

*Reversed.*