JULIA B. FERGUSON, Appellant, v. GRAND LODGE OF IOWA LEGION OF HONOR, Appellee.

**ACCORD AND SATISFACTION:** Part Payment—Unliquidated
1  Claim—Payment Under Condition—Insurance.    If parties are in an *honest* dispute as to which of two sums of money is due, whether such dispute arises over a question of law or fact, and the debtor tenders a sum on condition that it be accepted in discharge of the whole debt, and the creditor receives and retains such sum, an accord and satisfaction results, irrespective of the question whether the debtor was correct in his contention.    The claim

of the creditor that he received the sum as "part payment" will avail nothing.

PRINCIPLE APPLIED: Deceased held a $2,000 fraternal beneficiary certificate, he having agreed in the application therefor to comply with the constitution, laws, rules and regulations then existing or which might thereafter be adopted by the order. Several years after the certificate was issued, the grand lodge amended its constitution, increased its rates, and also made a certain charge or lien against each certificate. The net result was that each certificate was reduced in a certain amount. Deceased had full notice of all these changes, and continued for several years to pay all assessments and dues under the certificate. After his death, the lodge officials tendered $1,181 in full satisfaction of the certificate. This being unsatisfactory, much correspondence ensued, in which the officials explained to the beneficiary their method of arriving at the amount, and claimed that such method was in accord with the changes in the laws of the order. *The dispute was manifestly in good faith.* The beneficiary finally, but reluctantly, receipted the certificate in full and took the $1,181 and retained it. Later, action was brought for the $819, the beneficiary claiming that the $1,181 had been received as "part payment". *Held*, the acceptance and retention of the money constituted a complete accord and satisfaction, irrespective of the question whether the ·changes in the laws of the order were legal.

**INSURANCE:** Fraternal Insurance—Changes in Lodge Laws—Payment of Increased Rates—Ratification. The holder of a fraternal beneficiary certificate of insurance, by paying all increased assessments without protest or objection, thereby ratifies and confirms the changes in the constitution and by-laws under which such assessments are levied.

**APPEAL AND ERROR:** Review, Scope and Extent—Evidence Received Subject to Objection. The act of the court in receiving certain testimony will not be reviewed on appeal (a) when such testimony was received subject to objection, (b) when no rulings were either asked or made, and (c) when no exceptions were taken.

**APPEAL AND ERROR:** Abstract of Record—Amended Abstract—Failure to File in Time—Motion to Strike. An amended abstract making material corrections in appellant's abstract will not be stricken, even though not filed in time under the rules. (Rule 32.)

*Appeal from Page District Court.*—THOMAS ARTHUR, Judge.

THURSDAY, FEBRUARY 10, 1916.

THIS is an action at law, brought by the plaintiff to

recover from defendant the difference between the face value of a certificate of insurance for $2,000 and the amount paid her by the defendant, to wit, $1,181. There was a trial to the court, without a jury. The trial court found for the defendant, and that deceased waived his right to complain of the lien made upon his policy and the assessments made, and that plaintiff is estopped by such waiver; also that the payment by defendant of $1,181, which was received and retained by plaintiff, was a settlement and accord and satisfaction. Plaintiff appeals.—*Affirmed.*

*Earl R. Ferguson* and *C. R. Barnes,* for appellant.

*Jamison, Smyth & Hann, Clark & Clark* and *Orr & Turner,* for appellee.

PRESTON, J.—Plaintiff was the widow of William P. Ferguson. The defendant is a society incorporated under the laws of Iowa, engaged in the business of promoting fraternity and affording financial aid to widows of deceased members. In 1880, there was issued to William P. Ferguson a certificate of membership, providing for the payment of $2,000, in case of his death, to his wife, the plaintiff. Deceased paid all dues and assessments. He died in Iowa, on October 15, 1910. In October, 1910, proof of death was furnished, and, about August 7, 1911, defendant forwarded to plaintiff a draft for $1,181, which plaintiff claims was to apply on the certificate of insurance, and plaintiff alleges that she accepted the same in part payment. Defendant claims that such amount was received in full payment and was accepted by plaintiff in full settlement, and constitutes an accord and satisfaction. Plaintiff claims that she signed the receipt through a misapprehension of fact and through mistake and because of the fraudulent representations of the defendant company, and that the same was without sufficient or adequate consideration; and that there is a balance due on the certificate of $819. Plaintiff further claims that, through her son and agent, Earl R. Fer-

guson, she wrote defendant, requesting blank proofs of death, which were sent to her; that, on July 19, 1911, defendant wrote to said agent a letter, falsely representing that the value of said policy was $1,181; and that such representations were for the purpose of inducing plaintiff to accept said sum as the supposed value of the policy; and that, relying upon said representations, plaintiff signed the voucher for the amount of $1,181; that she did not, at the time, change the receipt on the back of the certificate, but retained the same and wrote a letter of inquiry, and returned the voucher for $1,181; that, on August 7, 1911, defendant wrote a letter purporting to explain to the plaintiff the situation and reasons why the sum of $1,181 was all that was due under the policy, and claimed that the same was the total amount due thereunder, and assured her that this was all she could recover, whereupon, she sent the said certificate, having signed the said receipt for $1,181, to defendant, but stated that she was not satisfied with the same; that, in accepting the $1,181, plaintiff relied upon the statements of said letters; that there was no sufficient or adequate consideration; that there was no sufficient consideration; and that the acceptance thereof by plaintiff was not binding as a settlement.

Many of the foregoing acts are admitted by the defendant in its answer; and, by way of defense and as an estoppel, it pleads that, at a meeting of the Grand Lodge, in 1905, an amendment was adopted and schedule of rates changed in such a manner as to create a lien in favor of the Beneficiary Fund against every beneficiary certificate existing or to be issued, in a sum equal to twelve death assessments per annum, plus 20 per cent of the gross amount of said sum for the period of life expectancy on each insured member, reckoned in the case of existing members from their age at last birthday prior to May 22, 1901, and in case of members received since said date, from their age at the date of issuance of their certificate; that the amount of said lien was to be credited, with the several amounts subsequently paid by each insured,

in the Beneficiary Fund; and, in case of the death of the insured before the amount so paid should equal the amount of such lien, there was to be deducted from the amount of his beneficiary certificate an amount equal to the difference, and the remainder only to be paid the beneficiary under said certificate; that deceased was duly and timely notified thereof; that, at a meeting of the Grand Lodge in 1907, a lien in favor of the Beneficiary Fund upon each certificate then issued or thereafter to be issued was provided, in a sum equal to the amount of 12 death assessments per annum, plus 20 per cent of gross amount of said sum for the period of life expectancy of each insured person, as per schedule rates and expectancy tables adopted by the Grand Lodge in 1907, reckoned in the case of new members according to their respective ages at their last birthday prior to admission, and in case of all members admitted since May 22, 1901, according to their respective ages at their last birthday prior to their admission, and in case of all members admitted prior to May 22, 1901, and less than 71 years of age on that date, at their respective ages at their last birthday prior to May 22, 1901, and on those who were past 70 years old on May 22, 1901, at the same age as those 70 years old; that there should be credited upon said lien the several amounts paid by said insured persons into the Beneficiary Fund from July 1, 1907, and in case of the death of insured before the amount so paid by him should have equalled the amount of such lien, there should be deducted from the amount of his beneficiary certificate a sum equal to the difference, and the remainder only should be paid to the beneficiaries under their said beneficiary certificate; that, in reckoning the periods of expectancy, as well as those periods during which the insured has made payments into the Beneficiary Fund, fractions of less than one half year may be disregarded, and those of one half or more considered as the next higher unit, and payments reckoned at uniform rates for complete yearly periods accordingly; that, should the pay-

ments of insured to the Beneficiary Fund equal or exceed the amount of such lien, then nothing shall be deducted from the full amount of the certificate; that deceased was duly notified of such amendment. Defendant alleges that deceased continued to remain a member of defendant order and accepted and ratified and complied with the amendment thus adopted and in accordance with schedule of rates, rules and regulations and by-laws of defendant, by paying assessments and dues in accordance with the schedule of rates and in compliance with the amendment creating a lien thus provided for, and so continued up to his death; that, by the acts and conduct of said deceased, in complying with the amendment and change and creation of a lien upon his said certificate, and further by his acts and conduct in complying with and accepting the said amendment and complying with the rules and schedules of rates, and continuing his membership and claiming and receiving the benefits thereof, he waived all right, if any he had, to call in question the acts of the Grand Lodge in the respects aforesaid, and is estopped, and his beneficiary is estopped, from now questioning the authority of the defendant Order in creating said lien and changing the schedule of rates and reducing the amount of his beneficiary certificate, as provided. Defendant also pleaded the application of deceased for membership. Defendant further pleaded a settlement and accord and satisfaction, for that, after the death of insured, and after defendant had received proof of his death; and before it had adjusted the loss and made payment to the widow, the correspondence which will be hereafter referred to was had between plaintiff and defendant; and alleged that thereafter, there was paid to the plaintiff the sum of $1,181 in full payment and surrender on her part of such certificate of membership, and that she received the same in full and duly cancelled and surrendered the certificate; that said sum of $1,181 was correctly figured in accordance with the constitution of the Grand Lodge, and there was no mistake, misapprehension or misrepresentation

made by defendant in respect to the rights of plaintiff or with reference to the amount which she was to receive on the certificate; that the plaintiff accepted said sum of $1,181 and used and appropriated the same to her own use, and thereby a full and complete settlement and adjustment for the death of insured under the certificate was had, and the said certificate surrendered.

There is no dispute in the evidence as to the fact that plaintiff did receive, retain and use the said sum of money, and, as we understand the record, plaintiff does not claim that the amount was not correctly figured according to defendant's theory. It is admitted by the reply and proven that the changes and alterations of the rules and regulations of the defendant Order were made, and that deceased had notice thereof and continued as a member and paid his assessments, and it is averred that any act of deceased upon which defendant bases a waiver was not voluntary, but was the result of the compulsion and for the purpose of meeting a dilemma in which he had been placed by the act of the defendant Order in so changing the rules; and there is pleaded a want of consideration moving from defendant to deceased, upon which a waiver could be based. For the purposes of Count Three only, plaintiff admitted the facts set out in defendant's answer on which it based the claim of settlement and satisfaction, but avers that the said $1,181 was received by her under the belief that this was only the amount which she was entitled to recover, and that she was led to this belief by the correspondence, and that, but for such representations, she would not have accepted said amount as she did; that there was no consideration for such settlement; that defendant never claimed that it did not owe plaintiff the amount so paid; that there is no dispute or controversy about that amount, but that defendant owed plaintiff the full amount of the policy.

The application for membership signed by deceased stated, among other things: "I, William P. Ferguson, having

made application to participate in the beneficiary fund of the Iowa Legion of Honor, do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may be enacted by said order, is the express condition upon which I am to be entitled to participate in said benefit fund. . . . I hereby pledge myself to accept and abide by your constitution, laws and regulations.''

On July 19, 1911, the Grand Lodge wrote a letter to plaintiff's agent as follows:

"July 19, 1911.

''Mr. Earl R. Ferguson,

''Shenandoah, Iowa.

''Dear Sir:

''I enclose herewith order No. 8685 in favor of your mother, Julia B. Ferguson, widow, for $1,181, the amount due her in full payment of her claim under certificate of William Ferguson, your late deceased father. Have your mother sign her name on the back of the enclosed order.

''Get the certificate or policy and on the back of it in the receipt cross off the words $2,000 and write in lieu thereof $1,181. Then have your mother sign her name to the receipt and you sign as witness to her signature. Please see that your mother signs her name each time the same as I have it on the face of the order, Julia B. Ferguson, widow. Then send to me the receipted certificate or policy and the enclosed order indorsed by your mother, as above explained, and I will send you a draft by registered letter by return mail in favor of your mother for $1,181. I have draft ready to send as soon as I receive the receipted certificate and indorsed order.

''I will explain as to the value of certificate of your father, and in order that you may fully understand my explanation I enclose herewith a copy of our Constitution and Laws. The members were all rated at the age they were May 22, 1901, as per last paragraph, page 2 of Constitution. Your father was then 57 years old, and this age, applied to our

schedule of rates and expectancy table, made his rate of assess-
ment for beneficiary fund $4 a month, or $48 a year, and his
years of expectancy 17. That made the expectancy lien on
his certificate 17 time $48 or $816. To this is to be added 20%
additional lien, as per section 6½, page 13, of Constitution.
20% of $816 equals $163, omitting fractions, and this added
to $816 equals $979, total lien on his certificate July 1, 1907.
There is to be credited on this lien all that is paid in assess-
ments for beneficiary fund from July 1, 1907, which were 40
assessments of $4 each, or $160, paid on lien. Subtracting
this from $979, total lien, left a balance of lien on his certifi-
cate of $819, and subtracting this from $2,000 equals $1,181,
value of his certificate at death, for which I enclose order or
voucher and have draft ready to send to you as soon as I
receive the order indorsed and the certificate or policy re-
ceipted by your mother.

Yours truly,

Grand Secretary."

On August 4, 1911, Earl R. Ferguson wrote the Grand
Secretary as follows:

"August 4th, 1911.

"Mr. J. H. Helm, Grand Secretary, Iowa Legion of Honor,
Cedar Rapid, Iowa, Dear Sir:—

"I am returning to you the voucher in favor of my
mother, Julia B. Ferguson, as beneficiary under Certificate
3650 of W. P. Ferguson, for $1,181.00 to apply on the same.
When will the balance of the $2,000, the amount of the certifi-
cate, be paid? I want to advise my mother in this regard.
Also will there be interest on this amount from sixty days
after the date of father's death, to wit: Oct. 15th, 1910?
Trusting she may receive this remittance in the next few
days, I am,

"Respectfully,

"Earl R. Ferguson."

On August 7, 1911, the Grand Secretary wrote Earl R. Ferguson as follows:

"Cedar Rapids, Iowa, Aug. 7, 1911.
"Mr. Earl R. Ferguson,
       "Shenandoah, Iowa.
"Dear Sir:—

"I received your letter with the voucher of $1,181 in favor of your mother, Julia B. Ferguson, indorsed by her. This makes the voucher all satisfactory, as it is for the correct amount due your mother, $1,181.

"I was surprised in receiving your letter that you did not understand my letter of explanation as to the value of your father's certificate. The explanation I gave you was correct and the correct amount due your mother under certificate of your father, William P. Ferguson. I will therefore explain as to the value of your father's certificate so that I think you will fully understand in regard to it.

"The changes as to assessments and rate and liens in the Iowa Legion of Honor were made at different times. When this order was first organized, it was placed on a level rate, $1.00 for each assessment, and if no deaths occurred, then there was no assessment made. The result of this was that the order became very much in debt. They were unable to pay the death losses as they occurred and, in order to save what had been paid in, the delegates, regularly chosen by the Subordinate Lodges, in convention legally adopted the several changes that have been made from time to time. Your father's application, which is on file in my office, is as follows:

" 'I, William P. Ferguson, having made application to participate in the Benefit fund of the Iowa Legion of Honor do hereby agree that compliance on my part with all the laws, regulations and requirements which are or may be enacted by said Order is the express condition upon which I am to be entitled to participate in the Benefit fund.'

"This stipulation was made by your father and all the

members that have joined our Order, and this stipulation gave the Grand Lodge power to so change the rates and liens in such a way that they could continue the Iowa Legion of Honor. If there had been no changes to change in any way, the order would have gone out of existence more than ten years ago, and we could not have been able to continue, because the conditions of the order were voluntary assessments, paid voluntarily, and if any member refused to pay his assessment, it could not be collected from him by law. The Insurance Department of Iowa directed, a number of years ago, that a change must be made if we wished to continue in the business and, under the instructions of the Insurance Department, the delegates legally adopted the changes that were made. First, to increase the assessments; second, to place a lien against the policies, and so on. Your father had legal notice of all the changes made in our Constitution and By-Laws and, by his continuing to pay his assessments under the change without filing any protest, he therefore acquiesced and ratified the changes made. All death claims of every member of the Order who died since the changes were made in the Order were paid according to the new regulation and the liens were deducted from time to time, whatever the liens might be.

"Your father was Secretary at Shenandoah for a number of years and all changes that were ever made by the Order he received notice of same, so that he knew as to changes made. There can be no interest paid, as the assessments are made on the members who die for the amount that is due under their certificate, and the amount due as per Constitution and Laws is the correct amount to be paid to the beneficiaries.

"In my letter of July 19th, I mailed you a copy of our Constitution and Laws and explained correctly as to the value of your father's certificate and the amount due your mother in full payment of her claim, $1,181, for which amount she has indorsed the voucher that I sent you; and if you will

examine my explanation and compare it with the Constitution, you will find that the estimate I gave you is correct, $1,181 is the amount due your mother in full payment of her claim.

"The draft is drawn by the treasurer in her favor for $1,181 and it is ready to mail to you as soon as I receive the receipted certificate from your mother. If you will fill in the receipt on the back of the certificate, cross off the words $2,000, and write in lieu thereof $1,181, then have your mother sign her name to the receipt and you sign as witness to her signature, and send the certificate or policy to me by registered letter, and I will at once on receiving it send you draft in her favor for $1,181.

"If there is anything else you do not understand and write me, I will be pleased to explain.

　　　　　　　　　　"Yours truly,
　　　　　　　　　　　　"J. H. Helm,
　　　　　　　　　　　　　"Grand Secretary."

On August 8, 1911, Earl Ferguson wrote the Grand Secretary as follows:

　　　　　　　　　　　　"August 8th, 1911.
"Dear Sir:

"I am answering your letter of the 7th inst., relative to father's life insurance in the Iowa Legion of Honor, and advising her that upon her return of the certificate signed by her receipting you for $1,181, such amount will be remitted to her, draft of which has already been executed and held for her receipt.

"I am enclosing herewith such certificate with her name duly signed by her.

"I trust the draft will come forward, promptly, and wish to further say that such a procedure is in no way satisfactory to her nor do I believe authorized by the Insurance Department, nor justified in law.

"However, I am complying with your request in sending you the enclosure desired, and as you suggest, by registered letter.

> "Respectfully,
> > "Earl R. Ferguson."

The draft or voucher for $1,181 is as follows:

> "Cedar Rapids, Iowa, July 17th, 1911.
> "Bros. G. F. Hilsinger, Grand Treasurer,
> > "Iowa Legion of Honor.

"pay to Julia B. Ferguson, widow, or order Eleven Hundred Eighty one and no-100 Dollars,

"Account of payment B. C. No. 3650 of Wm. P. Ferguson, of No. 95.

> "E. N. Helm, Grand Pres.

"$1181.    Attest:   J. H. Helm, Grand Sec."

This was signed on the back, "Julia B. Ferguson". Attached to the original certificate of deceased, which was returned to defendant by plaintiff, is a receipt, as follows:

"Received of the Grand Lodge of Iowa Legion of Honor, the sum of $1,181, which sum is in full of all claim and demand existing under the within certificate.

> "Witness my hand and seal this 8th day of August, 1911.
> > "Julia B. Ferguson.

"Witness:   Earl R. Ferguson."

On August 9th, the Grand Secretary wrote to Earl R. Ferguson a letter, in the following language:

> "Cedar Rapids, Iowa, August 9, 1911.

"Dear Sir:

"I received the receipted certificate of your mother for $1,181, the amount due her in full payment of her claims

under certificate of your father, W. P. Ferguson. I have her indorsed order you sent me in previous letter. This makes it all satisfactory, and I enclose herewith draft No. 5045 in favor of your mother, Julia B. Ferguson, widow, for $1,181, in full payment of her claim.

"I thank you for giving this attention.

"Yours truly,

"J. H. Helm,

"Grand Secretary."

As before stated, plaintiff has retained and used the proceeds of said draft and is now claiming it as a part payment only on the $2,000 certificate, while defendant says that, under the circumstances under which it was received, it amounts to a full settlement, accord and satisfaction.

1. We are very clear that, under the record heretofore set out, the receipt by plaintiff of such money and her retention and use of the same constitute a settlement and an accord and satisfaction. Plaintiff argues that the evidence shows without conflict that the defendant always admitted that it owed the plaintiff just what it paid her; or, in other words, the defendant paid the plaintiff exactly what it claimed to owe her, and, the plaintiff's claim being liquidated, the payment of a less amount than the whole would not be based upon a consideration, there being no dispute as to the amount paid; and that plaintiff did not accept the same as full payment of her claim; that plaintiff claimed $2,000 and defendant claimed to owe $1,181; that this is what it admitted owing her, and defendant paid plaintiff that exact amount. This contention would be sound if plaintiff had conceded that $1,181 was the correct amount owed. This she did not do; but, as stated, claimed the full amount of the certificate, $2,000.

We do not understand plaintiff to now claim that there

1. ACCORD AND SATISFACTION: part payment: unliquidated claim: payment under condition: insurance.

was any fraud or misrepresentation. Defendant stated what it claimed was the amount due under its construction of the amendments, and it was claiming that, under the law, it had a right to so amend. We see nothing in the record to indicate that such claim was not made in good faith. There was a dispute between the parties on this point, and it is not material whether the dispute is on a question of fact or law.

Appellant relies upon *Rauen v. Prudential Ins. Co.*, 129 Iowa 725, and like cases, which counsel claim are conclusive on the question of settlement. In the *Rauen* case, defendant set up a release by which policy for $1,000 had been released by the payment of $47.99, the release reciting that such amount was in full for all claim under the policy. The court held that because, in that case, the policy called for a certain amount, this was a liquidated demand, and, there being no dispute between the parties, an agreement to release and discharge a liquidated and enforcible debt on payment of less than the amount due is not supported by consideration and will not defeat an action to recover the unpaid remainder. But the court in the same case said:

"An exception is found to this rule when the creditor's claim is of a doubtful character, or is the subject of a *bona fide* dispute or controversy, and the part payment in discharge of the whole is made pursuant to an agreement of a settlement or compromise, or where the agreement is made and carried out pending actual litigation."

The correspondence which we have heretofore set out shows that the warrant or draft for $1,181 was sent to plaintiff upon condition, but it was at first returned to defendant. But thereafter, defendant explained the reason why it claimed there was but that amount due, and again sent the draft; and plaintiff's agent, Earl R. Ferguson, in directing defendant to again send the draft, stated that it was not satisfactory to her. But when the draft was received, it was accepted, and plaintiff receipted for it in full and surrendered

the certificate and has retained the money, the proceeds of the draft. It is not a question of her belief as to whether she was keeping it as a part payment, but rather the legal effect of what she did. There are cases in which there was no express condition attached to the check or draft or other remittance and the letter containing the same, and no act upon the part of the creditor other than the mere receipt and retention of the check or other remittance, and there are cases where the acceptance of a draft or remittance is conditional only, and it is used only after the sender has had full opportunity to reject the condition. But we do not have such a case here, nor do counsel for plaintiff make such claim for it.

In the following cases, the receipt and retention of the remittance were deemed such an acceptance as to constitute an accord and satisfaction: *Black v. Carlyle Paper Co.,* 133 Ill. App. 61, where the letter accompanying the draft stated that it was for the amount due and requested a receipt in full; *Goodloe v. Empson Packing Co.,* (Mo. App.) 122 S. W. 771, where the check was unmarked, but the receipt attached to the voucher for the amount which accompanied the check was marked, "In full payment for above amount", and the payee scratched out the word "full", and wrote over it in ink the word "part"; *Schwartz v. Hirsch,* 56 Misc. 618 (107 N. Y. Supp. 796), where, by the terms of the letter accompanying the check, the defendant notified the plaintiffs that the check was forwarded in full satisfaction and settlement of all claims by the plaintiff and in settlement of all disputes and matters between the plaintiffs and the defendants; *Smith v. Bronstein,* 107 N. Y. Supp. 765, where the check bore the words, "In payment of all bills to date". Where an agent received from his principal a check bearing the words, "Payment in full for commissions", without objection, and there had been a dispute as to the exact amount due him, it was held, in *Gribble v. Raymond,* 124 App. Div. 829 (109 N. Y. Supp. 242), that there was an accord and satisfaction, not-

withstanding that he struck out the words, "Payment in full for commissions" before he had the check cashed. And in *Caravia v. Levy,* 119 N. Y. Supp. 160, it was held that the retention by a physician of a check marked "Paid in full", delivered to him for professional services, was an accord and satisfaction, there being a genuine dispute as to the size of the bill. Where a debtor tenders a sum on the condition that it be accepted in discharge of the whole debt, the creditor is bound to either reject the amount offered or accept it on such condition; and if he accepts, there is an accord and satisfaction. *Preston v. Grant,* 34 Vt. 201; *McDaniels v. President,* 29 Vt. 230; *Partridge v. Phelps Lumber Co.,* (Neb.) 136 N. W. 65; *Nassoiy v. Tomlinson,* 148 N. Y. 326; *Tanner v. Merrill,* 108 Mich. 58; *Simons v. Supreme Council,* (N. Y.) 70 N. E. 776; *Fuller v. Kemp,* 138 N. Y. 231 (33 N. E. 1034; 20 L. R. A. 785, and Note); 1 Am. & Eng. Encyc. of Law, 419 (2d Ed.); *Jackson v. Security Mutual,* (Ill.) 84 N. E. 198.

If it is admitted that one of two sums is due, but there is a dispute as to which is the proper amount, the demand is unliquidated, within the meaning of accord and satisfaction. *Greenlee v. Mosnat,* 116 Iowa 535; *Sparks v. Spaulding,* 158 Iowa 491; 1 Cyc. 334, 335.

And as relating to the subject of accord and satisfaction, the claim is not liquidated if there is a *bona fide* dispute. *Wherley v. Rowe,* (Minn.) 119 N. W. 222; *Fire Ins. Assn. v. Wickham,* 141 U. S. 564.

And the dispute may be on a matter of law as well as of fact. *Coal Co. v. Gross,* 157 Ill. App. 218.

The *bona fides* of the dispute is a question of fact. The acceptance of a check in satisfaction of a claim for personal injuries and the use of the proceeds thereof, constitute a waiver of any fraud, of the person obtaining the settlement. *Oakes v. Chicago, B. & Q. R. Co.,* 157 Iowa 15.

This, we think, decides the case, and that, too, without regard to the question as to whether defendant had the legal right to amend its constitution, by-laws, rules and regulations.

2. The trial court seemed to have based its decision upon the question of estoppel and waiver. We deem it unnecessary to discuss at length this question, but are content to say that we think the contention of defendant should be sustained upon this ground also. William P. Ferguson, the insured, as shown by the record, consented to, acquiesced in and ratified all the changes in the constitution and by-laws by paying all subsequent assessments without protest or objection. See, as bearing upon this question, *Supreme Council v. Batte,* (Tex.) 79 S. W. 629; *Pokrefky v. Detroit Firemen's,* (Mich.) 80 N. W. 240; *Pokrefky v. Detroit Firemen's* (Mich.) 90 N. W. 689, 96 N. W. 1057; *Fort v. Iowa Legion of Honor,* 146 Iowa 183.

2. INSURANCE: fraternal insurance: changes in lodge laws: payment of increased rates: ratification.

3. Error is assigned as to certain rulings of the court in admitting testimony over plaintiff's objection. But the case was tried to the court and the evidence admitted subject to objection, but no ruling was made, nor was there any request for such a ruling, and no exception.

3. APPEAL AND ERROR: review, scope and extent: evidence received subject to objection.

4. Appellant has filed a motion to strike appellee's amendment to abstract, consisting of two pages, because the same was not filed in time under the rules and because the same was not indexed. We think the amended abstract was proper, in view of the fact that appellant, in preparing her abstract, had shown thereby that certain objections to evidence were ruled upon by the court, and appellant's argument had been made on the theory that such was the correct state of the record. The amended abstract shows that the rulings were reserved, anl refers to the different pages of the abstract and transcript.

4. APPEAL AND ERROR: abstract of record: amended abstract: failure to file in time: motion to strike.

Under some circumstances, where an additional abstract is filed later than the date prescribed by the rules, the party offending will be penalized by motion to retax the costs of

such additional abstract. *Ford Paving Co. v. Elzy*, 173 Iowa 38. The motion to strike is overruled.

We are of opinion that the trial court rightly decided the case, and its judgment is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.