Louis F. Graf, Appellant, v. Employers' Liability Assurance Corporation, Appellee.

**INSURANCE:** Issuance Without Statutory Approval. A life insur-
1   ance policy is valid and enforcible, even though issued without filing the form thereof with, and securing its approval by, the commissioner of insurance, as required by statute. (Sec. 1783-a, Code Supp., 1913.)

**INSURANCE:** Authorized Warranties. An insurance company may
2   validly provide, in its policies and applications therefor, that statements of fact shall be considered warranties.

**EVIDENCE:** Judicial Notice—Rules and Regulations of Public Officer.
3   Courts will not take judicial notice of the details or manner in which the insurance commissioner transacts the duties of his office, nor of the rules promulgated by him.

**COMPROMISE AND SETTLEMENT:** Good-Faith Assertion of Un-
4   founded Claim. The good-faith assertion of the claim that a policy of accident insurance was not valid because issued on a false warranty as to (1) occupation and (2) income, furnishes ample consideration for a binding compromise and settlement, even though,

possibly, such claim may be judicially unfounded. So held where the compromise was on the basis of what the insured would have been entitled to, had he told the truth.

*Appeal from Buchanan District Court.*—H. B. BOIES, Judge.

DECEMBER 21, 1920.

ACTION on insurance policy. Jury was waived, and cause submitted on a stipulation of facts. Petition was dismissed, and plaintiff appeals.—*Affirmed.*

*Cook & Cook* and *Edwards, Longley, Ransier & Harris,* for appellant.

*Milton A. Smith* and *Miller & Wallingford,* for appellee.

LADD, J.—The defendant is an insurance company, organized under the laws of England, with its principal place of business in the city of London, and, for more than 20 years last past, has been properly admitted to and has transacted business in this state. Its policies promise indemnities in event of death or disability resulting from "bodily injuries sustained * * * solely and independently of all other causes through external, violent, and accidental means, as specified in the following schedule, subject to the conditions hereinafter set forth." This schedule fixed the principal sum at $15,000, and, among other injuries enumerated, fixed the indemnity for loss of either foot by severance at or above the ankle at one half that sum. A policy was issued to plaintiff, April 20, 1916, and, on September 14th following, he lost a foot, by accident of the nature described in the contract. Due notice was given, and proofs of loss furnished; and, unless the defenses interposed are sustained, the insured is entitled to recover $7,500 indemnity, together with $50 surgeon's fee for amputating the foot, less $4,000 paid, with interest from October 17, 1916. The policy was issued "in consideration of $50 premium, and of the warranties in the schedule of warranties hereinafter contained." No. 15 of the conditions of the contract read:

1. INSURANCE: issuance without statutory approval.

"The assured on the acceptance of this policy makes the following statements, which he warrants to be true, and such statements are hereby made part of this contract: * * * 6. My occupation and duties are fully described as follows: General manager—office and general superintendent—not superintending. Classified as preferred. 7. My income per week exceeds the amount of single weekly indemnity under this and all other policies carried by me."

The policy stipulates the payment of a weekly indemnity of $50 a week for injuries not included in the schedule, for which flat indemnities are promised, but which "shall immediately, continuously, and wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation, * * * so long as he lives and suffers such total disability."

These warranties, if valid, are conceded to have been breached, in that the insured's occupation included superintending the construction of buildings, and his weekly income was less than the weekly indemnity of $50 per week. A controversy arose between the parties hereto as to whether defendant was liable on account of the injury sustained by plaintiff; and, although denying liability, it entered into an agreement with plaintiff, by the terms of which the latter, for and in consideration of $4,000, released and discharged defendant of all claims under the policy.

"The claim of the defendant is that the sum of $4,000 paid by the defendant in settlement accurately represented the amount which would have been payable to the plaintiff if the plaintiff had correctly stated his weekly earnings in his application for the policy of insurance, and the policy had provided for the payment per week in case of disability resulting from the receipt of an injury of an amount not in excess of the plaintiff's actual weekly earnings."

On the other hand, plaintiff contends that the alleged warranties set out "were unlawfully included in said policy of insurance in violation of law; and that, because of the failure to file or have this particular policy approved by the governor, auditor of state, and the attorney general, or any two of them, the defendant

**2. INSURANCE:**
**authorized**
**warranties.**

is estopped from pleading such warranties as defenses, or to prove that such warranties were made or are untrue; and that, as a consequence, the settlement alleged has no other consideration than the claim of defense under such alleged warranties."

The form of policy issued to plaintiff had not been filed in the office of the auditor of this state, nor approved by the governor, auditor, and attorney general, or any two of them. The issues for determination, as stated by the parties, are:

"(1) Whether the defendant is estopped from pleading or proving as a defense the falsity of the warranties. (2) Whether the facts alleged in defendant's answer as constituting a breach of warranty are a sufficient consideration for a settlement for $4,000 of the claim, which, but for the alleged breach of warranty as set forth above, would have been $7,500."

I. The policy was issued "in consideration $50.00 premium and of the warranties in the schedule of warranties." This schedule included those set out, known by the insured to be false when made; and it is sought to avoid them because of their alleged illegality. In the absence of interdiction of statute, an insurance company may exact warranties of facts thought material. See *Nelson v. Nederland Life Ins. Co.*, 110 Iowa 600; *Miller v. Mutual Ben. Life Ins. Co.*, 31 Iowa 216. We have not discovered anything in the Code prohibiting the inclusion of warranties in application or policy.

II. Appellant contends, however, that such prohibition is to be found in rules adopted by the insurance commissioner, under statutory authority. See *Noble v. English*, 183 Iowa 893. If any such there are, they were not proven in this case; and neither this nor the trial court will take judicial notice of the details or manner in which the insurance commissioner, though a state officer, transacts or performs the various duties of his office, nor of the rules by which his office is governed. *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092, cited by appellant, is not in point; and, as neither party has taken the trouble to investigate the question, we are content in merely stating the rule.

3. EVIDENCE: judicial notice: rules and regulations of public officer.

Counsel seem to rely, however, on Section 1783-a of the Code Supplement, 1913, and the two sections following. The

first of these prohibits any insurance company from transacting business within the state "under the provisions of Chapter 6 of Title IX of the Code, to write or use any form of policy or contract of insurance, on the life of any individual in this state, until a copy of such form of policy or contract has been filed with the auditor of state subject to approval or disapproval by the governor, auditor of state, and attorney-general, or by any two of them. Any form of policy or contract which has been disapproved by said officials shall not be written or used in this state."

Section 1783-b of the Supplemental Supplement to the Code, 1915, directs that the above officials "decline to approve any form of policy or contract of insurance unless the same shall, in all respects, conform to the laws of this state applicable thereto." Here follow provisions with respect to medical examination. Section 1783-c of the Code Supplement, 1913, announces a penalty of not less than $100 nor more than $1,000 against any company violating any of the above provisions, and provides that:

"Should any company decline to file a copy of its form of policies or contracts, as provided in this act, the auditor of state shall suspend its authority to transact business within the state until such form of policies or contracts have been so filed and approved."

The defendant had not filed a form of its policy with the auditor of state, nor had it been approved in the manner exacted. This rendered it subject to the imposition of a fine, but did not destroy the terms of its contract with the insured. Surely, the company might not plead its omission to comply with these statutes as a defense in an action for indemnity under its policy, and as certainly, the insured cannot insist on the portion of the policy favorable to his contention, and repudiate the remainder. As none of its provisions are illegal, save as the entire instrument may be denounced because of the company's failure to file the same, approved, as exacted in the statutes cited, we dispose of this feature of the case, on appellant's theory that the sections cited and quoted are in point and applicable, but are not to be understood as so holding, or that it was not organized and

governed by Chapter 4 of Title IX. Moreover, we treat the stipulation of fact as though it had read that no form of policy had been filed with the "insurance commissioner," instead of "auditor of state," as the statute exacted at the time in question. What we hold is that, notwithstanding the failure of the defendant to obey the statute, it is not relieved thereby from complying with its contract, being estopped from pleading its noncompliance therewith; and that the insured may recover, if at all, only on the terms of the instrument as written.

III. Was there a sufficient consideration for the settlement? But for the falsity of the warranties, the receipt of the $4,000 would have been only a partial payment, and the remainder of the $7,500 might have been recovered. But each warranty is conceded to have been false, in that the insured warranted (1) that his occupation was "office and general superintendent only, and not superintending," when his occupation was actually superintending construction; and (2) that his income per week exceeded the amount of a single weekly indemnity provided, when, in fact, such income was much less. Owing to the breach of these warranties at the very inception of the contract, a dispute arose as to whether the company was liable on the policy on account of the insured's loss of a foot; but, notwithstanding such denial, an agreement was entered into, in pursuance of which the plaintiff, for and in consideration of $4,000 paid by the company, receipted for same "in full satisfaction and discharge of all claims accrued or to accrue on the said corporation" under the policy, "in respect of all injuries or injurious results, direct or indirect, arising or to arise from an accident sustained by me on or about the 14th day of September, 1916." According to the stipulation:

*4. COMPROMISE AND SETTLEMENT: good-faith assertion of unfounded claim.*

"The claim of the defendant is that the sum of $4,000 paid by the defendant in settlement accurately represented the amount which would have been payable to the plaintiff if the plaintiff had correctly stated his weekly earnings in his application for the policy of insurance, and the policy had provided for the payment per week in case of disability resulting from the receipt of an injury of an amount not in excess of the plaintiff's actual weekly earnings."

We discover nothing in the record casting doubt on the good faith of the company in denying liability, nor in insisting that, if it is liable, the insured would be entitled to no greater indemnity than paid, nor have received a policy providing for any more, had he not practiced the deception and warranted it otherwise, as stipulated. Manifestly, there was a controversy between the parties, and want of good faith does not appear from the record before us. This being so, the adjustment of the claim by payment in part was sufficient consideration for the release executed by the insured. As said in *Urdangen v. Fryer*, 183 Iowa 39:

"If disputed claims are asserted in good faith, even though judicial investigation might have demonstrated them to have been unfounded in fact, the settlement thereof furnishes a sufficient consideration for the settlement agreement."

See, also, *Sparks v. Spaulding Mfg. Co.*, 158 Iowa 491; *Ferguson v. Grand Lodge*, 174 Iowa 61; *Greenlee v. Mosnat*, 116 Iowa 535. It is possible that any defense based on the breach of the two warranties might not have been maintainable in whole or in part; but that was the very essence of the dispute between the parties to adjust, and for which the settlement was made; and, as there is no showing of any want of good faith on defendant's part, such settlement may not be set aside or disregarded. It is binding on the parties, as the trial court rightly ruled. The judgment of dismissal is—*Affirmed*.

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.