Minnesota & Ontario Paper Company, Appellant, v. Register
& Tribune Company, Appellee.

May 8, 1928.

*Lancaster, Simpson, Junell & Dorsey, Robert Driscoll,* and
*John McLennan,* for appellant.

*Clark & Byers,* for appellee.

Faville, J.—On or about the 26th day of June, 1913, the
parties to this action entered into a contract for the sale of cer-
tain print paper by the appellant to the appellee. A large
quantity of paper appears to have been shipped
under said contract. This case involves only the
purchase price of three carloads, and the action
is for a balance claimed to be due on said purchase price. The
appellee tenders an issue as to a compliance with the contract

on the part of the appellant, and pleads an accord and satisfaction. Two main questions are presented on this appeal: (1) As to whether or not the appellant proved anything due it under the contract; and (2) whether or not there was such proof of an accord and satisfaction as warranted the court in directing a verdict in behalf of the appellee.

I. It may be conceded that, under the evidence in the case, there was a question as to the quality or grade of a portion of the paper furnished by appellant to appellee, and that the amount due for said paper, under the contract and evidence, would be a question for the jury; but, in view of our conclusion on the other branch of the case, this question becomes immaterial, and we give it no further consideration.

II. The important question in this case is whether or not there was an accord and satisfaction established by the record. The plea of accord and satisfaction is an affirmative defense, and the burden rested upon the appellee to establish the same. The evidence in the case is practically without dispute, and the officers of both appellant and appellee testified with commendable frankness. Appellant contends that an accord and satisfaction was not established, on the two grounds that no valid consideration was shown for the claimed accord and satisfaction, and that there was no proof of a meeting of the minds of the parties. A brief review of the facts of the case is necessary. It appears that, after the receipt of the three carloads of paper in question, to wit, on or about July 11, 1914, the appellee paid the appellant $1,008.32 on account. It also appears that there arose a dispute and controversy between the parties as to the balance due on said carload of paper. The question between the parties involved the matter of quality of certain of the paper furnished, rather than quantity. It is unnecessary that we discuss the merits of this question, but the fact is clearly established that the parties were not in agreement as to the amount due for the paper furnished. Finally, on or about October 3, 1914, the appellee sent the appellant a letter, inclosing a check payable to the order of the appellant. The accompanying letter was not produced, and the copy thereof was shown to be burned. The business manager of the appellee, who wrote said letter and check, is deceased. It clearly appears, under the record, that the check bore a statement to the effect that it was sent "in full

of account'' between the parties, and that the accompanying letter contained a statement to the effect that the check was sent in full settlement of said account. The evidence shows that the appellant received the letter and check at its business office in Minneapolis on or about October 5, 1914. The check was duly indorsed by the appellant, and was deposited to its account in a bank in Minneapolis on or about said date. It appeared that, at the time of the trial, the amount of said check was so retained on deposit by the appellant. The treasurer of the appellant, who had charge of its finances, testified in regard to the check, in part, as follows:

''I have no independent recollection of the receipt by the Minnesota & Ontario Paper Company of the check for $749.36. Such a check was received. I cannot say whether it came to me personally or not. Q. What was the practice in your office at that time in regard to incoming checks? A. Well, the mail is opened and distributed to the various departments, and the mail relative to collections and remittances came to my desk. Q. And when that mail, if it included checks paid on outstanding accounts, came to your desk, did it have the checks attached to the letters still? A. Yes, usually. Q. And did those checks and letters remain on your desk until you personally examined them? A. As a general thing, the checks were taken out and passed to the cashier, to be deposited in the bank, and then the correspondence, if there was anything necessary, would be taken up and handled. * * * This check, which has been referred to, was deposited in the Northwestern National Bank of Minneapolis, and placed to the credit of the Register & Leader Company. Q. What was the practice in your office in regard to the indorsement of checks for deposit at that time? A. Well, they were sent to the cashier's desk, and indorsed for deposit with a rubber stamp, indicating which bank they were deposited in. Q. And the rubber stamp was in your name, as treasurer, I assume? A. The company, by me, treasurer. The date on which that deposit was made was October 5, 1914. On or before October 8th, it first came to my attention that the defendant was claiming that the check had been tendered in full settlement of all of the accounts between the parties between the date it was received and October 8, 1914. It did not come to my attention prior to the deposit of the check. * * * I didn't know, at the time this check

was deposited, that there was any claim that it was tendered in full settlement. * * * This check was received by the person whose duty it was to receive it and to enter it on a list of items for deposit, and to indorse it and put it in the bank."

On October 8, 1914, the appellant sent the appellee a draft for the amount of $749.36, and wrote as follows:

"We are in receipt of your check for $749.36 on your account. By a clerical error the check was deposited before it was noted that you wished this amount to pay in full our invoice No. 343 for $1,054.68, shipped August 4th and our invoice No. 349 for $1,070.68, shipped August 5th, and that you had deducted therefrom your claim of $1,376.00. We decline to accept this check as payment in full of these two invoices and we enclose herewith Chicago draft No. 57400 on the Bank of Montreal at Chicago, payable to your order, for $749.36. We would be willing to accept this amount to be applied on your account generally, if you will send it in that way, but we cannot allow the rebate or discount which you claim, and we shall expect you to pay your account in full as heretofore rendered to you by us."

On October 9, 1914, the appellee returned the draft to the appellant, with a letter containing the following statement:

"We herewith return your check for $749.36 which you mailed us under date of October 8th, 1914. The payment was made by us October 3rd in full of account and both our letter and check so stated. Unless you can convince us that some injustice has been done you in this settlement, we do not care to reopen the matter."

On or about October 12, 1914, the appellant wrote its agent, who was to be in Des Moines, and sent him the draft. Said letter contained the following statement:

"We want you to do everything you possibly can to convince Mr. Southwell that he ought not to take advantage of an error of this kind and see if you cannot agree with him on a mutually satisfactory settlement of this claim."

There is no proof in the record as to the final disposition of this draft, but the record shows that it was not accepted by the appellee. Upon this state of facts, the question arises as to whether or not the appellant is bound to an accord and satisfaction. Appellant contends that there was no consideration.

"If disputed claims are asserted in good faith, even though judicial investigation might have demonstrated them to have been unfounded in fact, the settlement thereof furnishes sufficient consideration for the settlement agreement." *Urdangen v. Fryer*, 183 Iowa 39.

See, also, *Sparks v. Spaulding Mfg. Co.*, 158 Iowa 491; *Ferguson v. Grand Lodge*, 174 Iowa 61; *Greenlee v. Mosnat*, 116 Iowa 535; *Beaver v. Porter*, 129 Iowa 41; *Graf v. Employers' L. A. Corp.*, 190 Iowa 445; *Zabawa v. Osman*, 202 Iowa 561.

Appellant argues that there was no accord and satisfaction because there was no meeting of the minds of the parties.

The fact that the financial manager of the appellant did not personally receive the check and direct its indorsement and deposit, with personal knowledge of the contents of the letter accompanying it and the writing upon the check that it was in full settlement, did not, under the record, present a question for the jury on the subject of acceptance; or, as appellant puts it, did not present a jury question as to whether or not there was a meeting of the minds. The check was properly drawn payable to the appellant, and was duly sent to and received by it, with a letter, both of which properly advised the appellant that the check was sent in full satisfaction of the disputed claim. The check was received by the appellant in the regular course of business, and duly deposited by it to its account. There is no proof in the record that the person acting for the appellant in making such deposit was not authorized so to do. The check was handled in the ordinary and usual course of the business of the appellant. It was paid, and appellant received the money.

We deem it unnecessary to review and quote from the authorities at length on the question as to what constitutes an accord and satisfaction. We reviewed the authorities in *Sparks*

 *v. Spaulding Mfg. Co.*, supra, and it is unnecessary that we repeat the discussion therein contained. Under the rule in this state, it is established that, where there is a bona-fide dispute between the parties regarding the amount due upon an unliquidated claim, and the debtor offers the creditor a check for a less amount than the creditor claims, conditioned that the acceptance of said check is to be in full satisfaction of the claim, and where the creditor accepts and cashes the check, with knowledge that

the debtor was tendering it in such full payment, it became an accord and satisfaction binding upon the parties. As sustaining the rule, see, also, *Schultz v. Farmers Elevator Co.*, 174 Iowa 667; *Ferguson v. Grand Lodge*, supra; *Shahan v. Bayer Vehicle Co.*, 179 Iowa 923.

Conceding that cases may arise where a party might not be bound to an acceptance by the depositing of the check containing such an indorsement, the instant case does not present any such a situation. It is the generally recognized rule that if, through lack of attention, or carelessness, the creditor fails to understand the debtor's declaration that the check is sent in full discharge of an unliquidated claim, the acceptance by the creditor will be binding, even though the creditor neglects to read the condition as stated in the letter or check. *Michigan Leather Co. v. Foyer*, 104 Ill. App. 268; *Linn Co. v. Harris*, 118 Ill. App. 5; *Anderson v. Standard Granite Co.*, 92 Me. 429 (43 Atl. 21). As supporting our conclusion, see *Preston v. Grant*, 34 Vt. 201; *Shaw v. United Motors Prod. Co.*, 239 Mich. 194 (214 N. W. 100); *Canton Union Coal Co. v. Parlin & Orendorff Co.*, 215 Ill. 244 (74 N. E. 143); *Frazier v. Ray*, 29 N. M. 121 (219 Pac. 492); *American Ins. Union v. Wilson*, 172 Ark. 841 (291 S. W. 417); *Hotel Randolph Co. v. Watrous Co.*, 144 Wash. 215 (257 Pac. 629); *Jackman v. Kansas Elec. Power Co.*, 122 Kan. 19 (251 Pac. 431); *Berger v. Lane*, 190 Cal. 443 (213 Pac. 45); *Ex parte Southern Cotton Oil Co.*, 207 Ala. 704 (93 So. 662). For an extensive citation of authorities, see 1 Corpus Juris 562, Section 85.

The court did not err in directing a verdict in behalf of the appellee, and the judgment appealed from is—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.