[No. 28025.   Department Two.   August 30, 1940.]

SPRAGUE AVENUE INVESTMENT COMPANY, *Appellant,* v. PACIFIC FINANCE CORPORATION OF CALIFORNIA *et al., Respondents.*[1]

*Witherspoon, Witherspoon & Kelley,* for appellant.

*Tustin & Chandler,* for respondents.

BLAKE, C. J.—Plaintiff brought action to recover a balance of rent claimed to be due under a certain lease

[1] Reported in 105 P. (2d) 28.

entered into November 22, 1934, between it as lessor and defendant Pacific Finance Corporation as lessee. From a judgment entered on findings favorable to defendants, plaintiff appeals.

The lease was for a term of three years, commencing December 1, 1934, and ending November 30, 1937. The property demised was a store room located at the southeast corner of Sprague avenue and Post street, in Spokane. The lease provided that the

" . . . premises shall be used by Lessee, its subsidiary and/or affiliated companies, as finance, loan and insurance company offices and for no other purposes."

The home office of the respondents is in Los Angeles. The principal business of respondent Pacific Finance Corporation consists in the purchase of conditional sales contracts on automobiles. The other respondent, Consumers Credit Company, is a wholly owned subsidiary of Pacific Finance Corporation. Its principal business consists of chattel mortgage loans on automobiles.

The covenant of the lease that is in controversy is paragraph three, which provides the basis upon which the rent reserved is to be calculated. It is stipulated that the lessee is to pay rental "based on all outstanding business *on the books of the Spokane office*" of both the Pacific Finance Corporation and the Consumers Credit Company "as shown by the books on the next to the last business day of each calendar month." (Italics ours.) The term "outstanding business" is defined as that which

" . . . is now carried upon the books of the Pacific Finance Corporation as 'Account No. 10, Retail Contract Receivable' and upon the books of the Consumers Credit Company as 'Account No. 10, Retail Contracts and Loans Receivable.'"

At the time the lease was executed, there was "outstanding business" on the books in these two accounts in the amount of approximately seven hundred thousand dollars. The rent reserved was a minimum of two hundred dollars per month upon "outstanding business" of seven hundred thousand dollars or less; an additional 1/24 of one per cent upon "outstanding business over . . . $700,000.00 and up to . . . $1,000,000.00"; and a further additional 1/32 of one per cent upon "outstanding business over . . . $1,000,000.00."

At that time, the Spokane office had supervision of the territory composed of eastern Washington, northern Idaho, western Montana, and a portion of eastern Oregon. The "Retail Contracts and Loans Receivable" deriving from that territory were all carried on the books in accounts Nos. 10. Of the seven hundred thousand dollars outstanding business appearing in those accounts at the time the lease was executed, about one hundred thousand dollars came from western Montana. The Montana business developed rapidly and, by July 1, 1935, amounted to four hundred thousand dollars of the outstanding business tributary to the Spokane office. In the meantime, however, the accounts deriving from western Montana were removed from accounts Nos. 10, "Retail Contracts and Loans Receivable," and transferred to another set of books exclusively devoted to the Montana accounts. This segregation was made as of April 1, 1935. Nevertheless, for the months of April, May, and June, the Montana business was included with the outstanding business appearing in "accounts Nos. 10" for the purpose of computing the additional rent due under the percentage clause of the lease.

But on July 1st an office was opened at Missoula; and all business deriving in Montana was removed

from the supervision and control of the Spokane office. Thereafter, the Montana business was not included in computing the amount of rent due under the percentage clause of the lease. Consequently, the check for the July rent was less in a substantial amount than those for the months immediately preceding.

The vice-president of appellant wanted to know why. He was informed that the Missoula office had been opened, and that the Montana business had been removed from the Spokane office. He challenged respondent's right under the lease to do so. Respondent's manager insisted that there was nothing in the lease to prevent the action taken, and that respondent would no longer regard the business deriving from the Montana territory as "outstanding business" in computing the rent due under the percentage clause of the lease. And every month thereafter, respondent remitted what it calculated to be the amount of rent due on that basis.

Appellant received the rent checks without further protest until the end of the term. Indeed, not until May 24, 1938, does appellant appear to have again challenged the right of respondent to exclude the Montana business in computing the amount of rent due. On that date, appellant made demand on respondent for an accounting for rent due from July 1, 1935, to the end of the term, on the theory that, under the percentage clause of the lease, the Montana business should have been included as "outstanding business" on the books of the Spokane office.

The complaint as originally filed was drawn on that theory, but subsequently was amended to the effect that, if the lease was not so construed, it was, nevertheless, the intention of the parties that business deriving from the Montana territory should, throughout the term, be considered as "outstanding business" on the

books of the Spokane office; and that, if such a stipulation did not appear in the lease, it was due to the mutual mistake of the parties. This respondents denied.

Affirmatively, respondents plead estoppel and an accord and satisfaction. These defenses were grounded on the facts heretofore set out: That respondent, remitting for the July, 1935, rent, did not include the Montana business in computing the amount due; that appellant had knowledge of the fact and protested; that some twenty-eight monthly payments were thereafter made on the same basis, which were accepted by appellant without protest. Upon these facts, respondents contend that a dispute arose in August over the construction to be placed on the clause of the contract defining "outstanding business" on the books of the Spokane office; that this dispute supplied the ground for an accord and satisfaction; that the accord and satisfaction was consummated when payments of rent were made by it of the full amount due under its construction of the definition of "outstanding business" and accepted by appellant without further protest.

Whether there has been an accord and satisfaction, is a mixed question of law and fact. *First Nat. Bank of Ritzville v. White-Dulaney Co.*, 123 Wash. 220, 212 Pac. 262. The rule of law by which the facts are to be measured in such cases as this is stated in *LeDoux v. Seattle North Pac. Shipbuilding Co.*, 114 Wash. 632, 195 Pac. 1006, as follows:

"The general rule is that, where a debtor sends to his creditor a check for the amount he is willing to pay, and at that time informs the creditor that he intends the check to be considered as full payment, then, by the acceptance and cashing of the check, the creditor agrees to the settlement and cannot thereafter seek additional compensation."

The rule, as stated, is reaffirmed in the case of *Graham v. New York Life Ins. Co.,* 182 Wash. 612, 620, 47 P. (2d) 1029. It is said, however, that, unless there is a new consideration, the rule does not apply if the amount owing is liquidated and certain. *First Nat. Bank of Ritzville v. White-Dulaney Co., supra.*

■ So, the question first to be determined here is whether the amount owing is liquidated and certain. Of course, ascertainment of the amount of rent due every month was purely a matter of mathematical calculation based upon the amount of "outstanding business" on the books of the Spokane office. Viewed in that aspect, the amount due was certain, whether we accept either appellant's or respondents' construction of the definition of "outstanding business."

But it does not follow that the amount owing was *liquidated* in the sense that the term is used in the *White-Dulaney* case.

Where a dispute arises over the construction of the terms of a contract by which liability is to be measured, that in itself renders the amount owing unliquidated. 1 C. J. S. 519; *Nassoiy v. Tomlinson,* 148 N. Y. 326, 42 N. E. 715, 51 Am. St. 695; *Ferguson v. Grand Lodge of Iowa Legion of Honor,* 174 Iowa 61, 156 N. W. 176; *Schultz v. Farmers Elevator Co.,* 174 Iowa 667, 156 N. W. 716. The rule was applied by this court in the recent case of *Paulsen Estate v. Naches-Selah Irr. Dist.,* 190 Wash. 205, 67 P. (2d) 856, and implicitly recognized in the early case of *Seattle, R. & S. R. Co. v. Seattle-Tacoma Power Co.,* 63 Wash. 639, 116 Pac. 289—a decision upon which appellant puts much reliance in resisting the plea of accord and satisfaction made here. That action grew out of a contract for electric power which, in respect to computing amounts payable for power used, bears some analogy to the lease here under consideration.

The railway company's liability was based upon certain rates specified in the contract and was to be computed on the quantity of power used. The contract also provided that the railway company should pay a minimum of one thousand dollars per month, irrespective of the amount used. A dispute arose as to the method of computation. The railway company remitted only one thousand dollars a month with the statement that the check was in full payment for the month covered by the remittance. The power company cashed the checks and promptly returned the statements with the advice that the remittances were received merely as payment on account. As the dispute over the method of computation, provided for in the contract, progressed, the railway company tacitly recognized that its obligation was not fully discharged. In other words, neither party considered the one thousand dollar monthly checks as payment of the full amount due under the contract. Consequently, the court held against defendant's plea of accord and satisfaction.

In the case at bar, there can be no question but that respondent intended its monthly remittances to be a payment in full of the amount due under the terms of the lease. Nor can there be any doubt that appellant knew that they were made with that intention. The manager of appellant testified:

"When we received a check for the first part of August for the July percentage on the lease, it had dropped off about one hundred dollars a month over the previous month, and I went down and asked Mr. Huggett what the cause of it was and he told me that they had moved the Montana business out of Spokane into Missoula, and I questioned his right to do that, and he stated very emphatically that he thought they had a right to do that; . . . THE COURT: Q. According to your understanding, Mr.

Cooper, it is a question of a difference of opinion between the two parties? A. Absolutely, an honest difference of opinion between the two parties on the construction of the lease."

Holding that view of the controversy, having that knowledge of respondents' position, and not having further "questioned [its] right to do that," appellant must be held to have accepted each monthly remittance in full payment of the rent due for the preceding month.

Judgment affirmed.

BEALS, STEINERT, DRIVER, and JEFFERS, JJ., concur.