160 So. 543

### AMERICAN NAT. INS. CO. v. REED.
#### 6 Div. 542.

Court of Appeals of Alabama.
Oct. 30, 1934.

Rehearing Denied Feb. 26, 1935.

H. M. Powell and John C. Arnold, both of Birmingham, for appellee.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

SAMFORD, Judge.

The complaint as finally amended consisted of three counts, declaring on two policies of insurance issued on the life of Thos. L. Reed and payable to Gertrude Reed, his wife,

as beneficiary. The policies, by a separate clause, provided for the payment of an additional amount equal to the amount named in the face of the policy in case of death by accident. Death of the insured is admitted and payment was made by 'defendant and accepted by plaintiff of the amount named in the face of the policy as indemnity in case of death by natural causes. Suit is here instituted to recover upon the clause providing for an additional amount in case of death caused by accident, etc., and generally referred to as the double indemnity clause in the policy.

Count 1 is in Code form for suit on a policy of life insurance and the point is taken by demurrer that the claim is for death by accident and that the count is defective. This point, however, is expressly waived in brief of counsel for appellant and for that reason is not passed upon in this opinion. Suggestion is, however, made that if the suit is on an accident contract and not on a policy of life insurance, what becomes of defendant's plea of accord and satisfaction which sets up payment alone of the amount due for death by natural causes?

The first issue raised by the assignments of error is as to whether the evidence justifies a finding by the jury that the insured came to his death by "bodily injury, solely through external, violent and accidental means" within the terms of the policy contract. In a case wherein this same question was raised and the evidence adduced was substantially as appears in the case at bar, our Supreme Court held that the question was for the jury and affirmed the judgment of the court. In view of that holding we do not feel authorized to reach a different conclusion, and upon the authority of that case we hold that the rulings of the court upon objections and charges affecting this point are free from error. Republic Iron & Steel Co. v. Reed, 223 Ala. 617, 137 So. 673.

[██ The only other question is as to whether the payment of $748.10 by check drawn by defendant and payable to plaintiff and indorsed and collected by her was in full accord and satisfaction of the two policies sued on in this case; the check containing the statement in its face the following: "Endorsement hereon by the payee shall constitute a receipt for the amount hereof in full settlement of death claim under policies 5924103 and 6102915 upon the life of Thos. L. Reed, deceased."

Under our statute Code 1923, § 7669, all receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal or otherwise, must have effect according to the intention of the parties thereto.

C. M. Owens, superintendent of defendant, at Lewisburg, had charge of the settlement of this death claim with plaintiff. The two policies were turned over to him at his request, after which he filled out the death claim on blanks sent him by the company, the check for $748.10 was sent to Owens, to be delivered by him to plaintiff, which he did. Owens testifies that plaintiff accepted the check without protest after he had told her the company would not pay the double indemnity. Plaintiff testified, and there was other evidence tending to prove that when the check was tendered her she accepted it with the understanding that if the courts should hold, in the case of Republic Iron & Steel Co. v. Reed, that Reed's death was accidental, the company would pay the additional amount provided in the policy for accidental death.

Evidence was introduced by defendant tending to prove that Owens was merely a soliciting agent and as such had no authority to bind the defendant by waiver or admission. If Owens was such an agent, then he would have no such authority, but in this case there is evidence from which the jury might infer that Owens had authority in this matter beyond the letter of his contract and that he had authority at least to induce plaintiff to accept and cash the check. At least the defendant had knowingly placed in the hands of Owens papers and letters relative to the settlement of the death claim of Reed which permitted him so to act as to justify this plaintiff in believing that he had authority to make the statement regarding the settlement that the check was accepted subject to the finding of the Supreme Court in a case then pending. Defendant is, therefore, estopped to deny the agreement by which the check was delivered and accepted. 32 Corpus Juris, 1059(135).

██ There is another proposition which under one phase of the evidence would preclude a recovery by defendant on its plea of accord and satisfaction. The policy contract was dual in its obligation to pay: (1) Indemnity for death of insured in any event. (2) An additional amount equal to the face of the policy in case the death was by accident. There was no controversy between the parties as to the first of these obligations, and when defendant drew its check and caused it to be delivered in the exact amount of the first

obligation, it did no more than to pay the amount admittedly owing by it under the policy, without reference to the second obligation under the contract, and the payment of this amount was no consideration for a release of the second obligation. That which one is unqualifiedly, confessedly obliged to do cannot afford consideration for another contract. No detriment because of the payment of the $748.10 accrued to the defendant; and no benefit to which plaintiff was not already entitled accrued to her because of the payment of the sum. There was no consideration for the, in effect, new agreement of which defendant could avail itself through its plea of accord and satisfaction. The foregoing is paraphrased from the opinion in Abercrombie v. Goode, 187 Ala. 310, 65 So. 816. To the same effect is the case of American Workmen v. James, 14 Ala. App. 477, 70 So. 976.

We find no error in the various rulings of the court on this point.

There being no error of a reversible nature found in the record, the judgment is affirmed.

Affirmed.

### On Rehearing.

The appellant in his exhaustive brief filed on application for rehearing insists that, under the facts as disclosed by this record, it is entitled to the general affirmative charge, and further insists that a different rule as to the burden of proof should exist in this class of cases and those cases involving claims under the Workmen's Compensation Act.

In reply to this last insistence, we simply say that the rule as to the burden of proof is the same in both cases. If the evidence is in conflict and there is evidence to sustain the complaint, the general charge should not be given. If the evidence is not in conflict, it becomes a question of law and the affirmative charge should be given. Rep. Iron & Steel Co. v. Reed, 223 Ala. 617, 137 So. 673.

It is also urged that the evidence in this record shows, without dispute, that the cause of death was due to general septicaemia caused by gonococcus germs and not the result of a bodily injury sustained solely through external, violent, and accidental means.

It may be conceded, for the purposes of this decision, that the immediate cause of Reed's death was a general septicaemia caused from a gonococcus germ already in the body of the deceased at the time of the alleged accident, but was the activity of this germ superinduced by a bodily injury sustained solely through external, violent, or accidental means? If such injury worked upon the disease germ already existent in the deceased when the accident occurred, so that it stimulates such latent disease into activity and thereby resulted in the death of the insured, such death was the result of the accident and plaintiff would be entitled to recover. Goslin-Birmingham Mfg. Co. v. Gantt, 222 Ala. 321, 131 So. 905; Rep. Iron & Steel Co. v. Reed, supra.

It is impossible to bring to this court through a record that indefinable something, which for the lack of a better term has been called the "atmosphere of the trial." For that reason great weight should always be given to the conclusions drawn by a jury from the testimony, which they hear and pass upon. That fact must always have its effect on the mind of the appellate court in passing on the question as to whether there was any evidence justifying a verdict.

In the instant case the question is: Was the death of the insured due to a sustained bodily injury, solely through external, violent, and accidental means? The entire evidence in this case points with unerring certainty to the fact that the immediate cause of the death of the insured was due to an infection beginning near the right knee, from whence it spread through the entire system, causing a general septicaemia from which insured died within three weeks after its discovery. Insured was perfectly well, working and walking without a limp, up to the close of work on Saturday, and after work hours he walked some three miles to his home. Insured worked in the mines, with a sharp pick and shovel. When he arrived home between 2 and 4 o'clock, he showed his wife a wound in his knee, and at that time it was red and swollen and there was a little blood, but not much. When he quit work he left his overalls in his locker at the mines, and upon examination of these overalls, after his death, it was found that there was a hole in the right leg at the point of the knee. On Sunday morning the knee was "all swollen up" and he went to the doctor. The doctor found a wound on or near the right knee which he painted with iodine, and to relieve the pain he gave him morphine and ordered insured to the hospital for treatment and to be given a tetanus antitoxin such as is given in wounds, "a nail stuck in your foot or any puncture you may get." The doctor gave it as his opinion that the pain was coming from the infection. The doctor further said: "The

abrasion I saw the Sunday evening, it was just as red and angry as it could be all around this place here and redness extended upward more than it did down." From this the infection continued to spread. The doctor further said: "There was very little difference between this and any other infection in a punctured wound of this kind." There was abundant testimony in corroboration of the above facts, and from these facts the jury found for the plaintiff.

Per contra, on this point, the defendant offered the testimony of the man who worked in the same mine with insured on Saturday, and he stated that he saw no wound on insured's knee and that he walked home with him after work hours and heard no complaint. In addition to this testimony, defendant offered much learned, technical, and expert testimony tending to prove that insured came to his death by reason of a general septicaemia caused by gonococcus germ from the inside and not as a result of an external injury. This expert testimony is admissible, but not conclusive, and while not denied in so many words, the facts justify a conclusion different from that expressed by the experts.

Much is said regarding the doctor's certificate of death furnished by plaintiff with proof of death, wherein the doctor stated that death was due to general septic condition following infected knee and in answer to the question, "Was death due to accident?" and the answer, "No." This answer is not conclusively binding on plaintiff.

The opinion is extended, and the application is overruled.