F. E. KELLOGG, Ancillary Administrator, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellee.

No. 47056.

(Reported in 29 N. W. 2d 559)

198

NOVEMBER 11, 1947.

REHEARING DENIED FEBRUARY 13, 1948.

Dickinson & Dickinson and Jens Grothe, all of Des Moines, for appellant.

Evans, Riley, English & Jones, of Des Moines, for appellee.

BLISS, J.—The defendant, an Iowa corporation, with its principal place of business at Des Moines, Iowa, on March 14, 1931, issued to James M. Flowers its certificate of membership, naming Willie P. Flowers, wife of the insured, as the beneficiary. The insured on June 25, 1945, while driving his Chevrolet coupé on a street of Atlanta, Georgia, collided with a motor truck and died shortly thereafter. His widow, as beneficiary under the certificate, filed the petition in this action, and sometime thereafter and before trial, died. The ancillary administrator of her estate was then substituted as plaintiff.

The insured, sixty-eight years old at his death was then

a "Class A Member" of defendant in good standing. Section 1 of Article II of its substituted bylaws then in force, subject to the conditions, limitations, and exceptions thereinafter stated, provided:

"Whenever a member of this Association shall through accidental means receive bodily injuries which shall, independently and exclusively of all other causes, result within 90 days, in the death of the member, his beneficiary shall, in lieu of weekly indemnity in these bylaws provided, be indemnified in the sum of, (1) $5,000.00 in case of CLASS A MEMBER * * * at the time of injury, or * * *."

The petition admitted the payment of $500, and prayed judgment under said section for $4,500.

Defendant's answer did not challenge the petition other than to deny that the insured's death was the result of bodily injuries accidentally received, and independently and exclusive of all other causes, and to allege two separate defenses. The first of these alleged that among the conditions, limitations and exceptions in said Article II of the bylaws was the following:

"H. This Association shall not be liable in excess of one-tenth (1/10) of the amounts in these bylaws provided for death, disability, or specific loss arising from, resulting in, or effected or aggravated by (1) infection; (2) heart disease; (3) apoplexy; (4) cerebral hemorrhage; (5) or paralysis."

Defendant alleged that the insured for some time prior to his death had been suffering from heart disease, and that his death was effected thereby within the meaning of said paragraph H, and therefore plaintiff was not entitled to recover in excess of ten per cent of the maximum benefit otherwise payable under the certificate, to wit, $500.

Another separate defense alleged was that: the beneficiary submitted to defendant proofs of loss which included a doctor's certificate stating that the cause of death was coronary thrombosis and shock from auto accident, and after its receipt defendant sent to the beneficiary a draft for $500 stating on its face that the endorsement of the check by her as payee

would be a settlement in full of all claims for indemnity because of the accidental injuries sustained; and the beneficiary endorsed the draft and secured the $500 and thereby accepted the conditions on which it was tendered and compromised and settled all claims that she might have against the defendant under the certificate.

In reply to the answer plaintiff alleged: that the death of the insured was caused by internal injuries and shock received in the collision, and not from heart disease or coronary thrombosis; that she received the $500 draft not in compromise and settlement of her claim of $5,000, but as a credit thereon; that she did not sign the release accompanying the draft, nor surrender the certificate as requested by defendant; that her claim for $5,000 was an absolute and liquidated demand to which defendant had no defense, and said claim was not of a doubtful nature and defendant so knew, and the claimed compromise and settlement was without any consideration and void; that it was of no effect because of overreaching; that the draft was in payment of an amount owing and due the beneficiary by virtue of the certificate, articles of incorporation and bylaws of defendant, and the purported compromise and settlement was without consideration, void, and not binding on plaintiff; and there was no bona fide dispute or good-faith controversy touching the subject matter of the claimed compromise and settlement between the beneficiary and the defendant, and the acceptance of the draft did not constitute an accord and satisfaction.

All pleaded issues were submitted to the jury, and neither party excepted to any instruction, so that they are the law of the case. In Instruction No. 5 the jury was told that:

"The plaintiff has the burden of establishing by a preponderance or greater weight of the evidence that there was no accord and satisfaction. The burden is upon the plaintiff to establish by a preponderance of the evidence that the defendant association had no valid defense, in whole or in part, to Willie P. Flowers' claim, and knew this at the time it wrote the letter Exhibit 'A'; and if you find the plaintiff has so proven by the greater weight or preponderance of the evidence, then

you must find that there was no accord and satisfaction; but, if you find the plaintiff has failed to so prove by the greater weight or preponderance of the evidence, then there' was an accord and satisfaction and the plaintiff would not be entitled to·· recover anything in this case."

At the close of all the evidence the defendant moved that the court direct a verdict for it upon three grounds, namely: (1) the evidence was insufficient to sustain a finding that the insured, through accidental means, received bodily injuries, which, independently and exclusively of all other causes, resulted in his death (2) the evidence showed without dispute that heart disease was a contributing cause of insured's death, and, under paragraph H of the bylaws, the defendant was liable for but one tenth of $5,000, or $500, which it had paid (3) the acceptance of $500 was a full compromise and satisfaction of any claim the beneficiary might have had against the defendant.

The court ruled that plaintiff was entitled to go to the jury upon all the matters stated in each ground of the motion. Plaintiff then moved to withdraw from the jury the issue of accord and satisfaction. The motion was denied. The jury, by its verdict, assessed the amount of plaintiff's recovery at $4,500.

Defendant filed a motion for judgment notwithstanding the verdict. The first two grounds of the motion were the same as in defendant's motion to direct. The third ground was:

"The undisputed admission, as well as the admissions in the pleadings, establish conclusively that the beneficiary in the certificate of James Mark Flowers accepted the payment of $500 tendered to her on condition that it be in full payment and compromise of any claim that she may have had against the defendant-Association on account of the death of James Mark Flowers. The record shows as a matter of law that there was an accord and satisfaction as pleaded by defendant, which is set forth in the third ground of defendant's motion for a directed verdict, and there was no evidence in the record which is sufficient to justify the submission to the jury of the question of whether or not the defendant knew that it had no defense to

a claim of the beneficiary of James Mark Flowers under its certificate of membership * * * at the time it tendered to Willie P. Flowers $500 in full compromise and satisfaction of all claims."

A fourth ground of the motion was:

"The evidence showed without dispute that there was no basis for the claim of bad faith on the part of the defendant in the assertion that the death of James Mark Flowers arose from or was effected by heart disease."

The court after stating that the motion to direct and the motion for judgment were substantially the same ruled:

"The court finds the grounds of the motion to direct and the motion for judgment * * * as set out in * * * number (3) thereof, are good, and finds that any claim arising from the membership certificate referred to in this case, was unliquidated as well as the subject of a bona fide dispute.

"It is the opinion of the court that the proofs [of loss] submitted by the beneficiary * * * show on the face the basis of a good faith dispute, and that by accepting and endorsing the draft * * * and retaining the proceeds thereof, a complete accord and satisfaction was consummated.

"It is the opinion of the court that plaintiff failed to submit any evidence that defendant did not have a defense to a claim of $5,000, nor are there any circumstances shown to indicate any knowledge by the defendant association that it was legally liable for the full amount.

"It is therefore the conclusion of the court that an accord and satisfaction on an unliquidated, disputed claim having been entered into between the parties, that the plaintiff is not entitled to recover in this case, and that the motion for judgment * * * should be and hereby is sustained."

In his argument plaintiff states:

"The sole and only question presented by this appeal, as we understand the record, is whether or not (1) the issue of accord and satisfaction should have been submitted to the jury,

and (2) whether, having been submitted to the jury, the verdict of the trial tribunal should have been permitted to stand."

In opening its argument defendant states:

"It is not necessary to consider the other grounds of the motion to direct a verdict nor of the motion for judgment notwithstanding the verdict. The only question presented by this appeal is whether or not the settlement which was admittedly made was supported by a legally sufficient consideration."

The propositions relied upon by the parties and the summation of each. as to the questions before us present the subject of accord and satisfaction and the essential elements thereof. Most of these elements are matters of fact. The only question submitted to us for determination is whether the issue of accord and satisfaction was established as a matter of law.

We set out a summary of the relevant and material facts. The insured, a part-time nursery or tree salesman, and his wife lived at Chamblee, just out of Atlanta. In his work he used and drove an automobile. He drove away in it from his home about seven-thirty in the morning of June 25, 1945. About four forty-five that afternoon in going to meet his wife returning from work, he drove east on Osborne Road and reached its intersection with Peachtree Road which crossed Osborne Road diagonally in a northeast-southwest direction. He was alone in the car. Stopping at the intersection he gave the signal for a left-hand turn, and had gone northeast but a few feet into the intersection when a truck traveling southwest on Peachtree Road, on the wrong side of the highway, collided head on with the insured's car, driving it back about eight feet, smashing the front wheels and fenders and the front end of the car, and whirling it around one or more times. It was not upset and came to rest facing westerly. A witness, riding in the cab of the truck with the driver, testified that the speed of the truck was fifteen or twenty miles an hour, and that the impact of the collision threw him forward into the windshield, bruising his head over the eye. The same impact in all probability threw the insured into the steering wheel. He sat in the car for a time. He was very pale and appeared to be in pain. He held his right arm across his abdomen with his fingers

extended into his short ribs, and said, "I am shaken up terribly." After the collision he got out of the car or was helped out. He stood up, walked about, sat on the running board, arose, and answered questions about the collision. He was apparently suffering and not at ease in any position. This went on for twenty-five minutes or more. His condition became worse and he was put in a car and taken to his home where he died about six that afternoon. There were no external, visible, injuries on his body. He gave no indication of pain in his heart, in its locality, in the chest, shoulders, arms or upper part of his body. The testimony to the above matters is found in the depositions of three persons who appeared at the scene of the collision, at or shortly after it took place. The defendant investigated the matter before it mailed the check to the beneficiary, and it is a fair inference that it had knowledge of these facts when the draft was sent. It had someone at Chamblee.

A doctor, a graduate of Emory University in 1935, arrived at the Flowers home about ten minutes after the death of the insured. There is no evidence that he had ever attended, examined, or talked to Flowers during his life. He had known him about one year. In his statement of July 2, 1945, in the proofs of loss, his answers respecting the cause of death (omitting questions) were:

"Coronary thrombosis. Shock from auto accident about 1 hour before death. * * * Had been dead about 10 minutes when first seen. [No] constitutional [or] subjective symptoms immediately prior to accident. Became short of breath as soon as reaching home and died before aid came. * * * It is felt that the accident and subsequent nervous shock initiated the fatal coronary attack. * * * Has had previous attacks of angina, indicating coronary disease [which contributed to death]. Q. What test confirmed diagnosis? Give major findings of —X-ray, A. none; operation, none; autopsy, none."

In the blank furnished by defendant entitled "Statement of Disinterested Neighbor or Friend," appeared the statement that the affiant had known the insured for five years, that he was not a user of drugs, narcotics, or spirituous liquors, and that the cause of his death was coronary thrombosis.

There was a blank questionnaire for the beneficiary. It was agreed that someone wrote the answers and she signed her name on the paper. As to whether the insured was in good health at the time of the injury the answer was "Yes, Fair." To the question "State fully the cause of any disability experienced by member during last two years," the answer was "See Doctors statement Paragraph No. 11." That answer was: "Has had previous attacks of angina, indicating coronary disease." To the question "To what extent was member effected [sic] at time of injury?" the answer was "Expressed shortness of breath, excitement and upset stomach." To the question "What were the visible signs of injury?" the answer was "None except severe shock."

The proofs of loss were delivered to the defendant. There is no evidence of any other communication or contact between the beneficiary and the defendant until defendant wrote and mailed this letter to the widow:

"July 27, 1945.

"Mrs. Willie P. Flowers,

"R.F.D. 2

"Chamblee, Georgia In re: James Flowers, Deceased

"Dear Mrs. Flowers: Our Directors have carefully reviewed the file in connection with the claim presented on account of the death of the above named.

"The contract provides for a limited liability in the event the death arises from, results in, or is affected [sic] or aggravated by heart disease. It appears from the proofs as well as our own investigation of the matter that the death so occurred.

"Our Directors, therefore, *have approved and ordered the payment of the claim on the basis provided by the contract,* and the Association's check in the amount of $500.00 is enclosed herewith.

"Kindly complete and return the original release enclosed herewith. The copy of the release is for your file.

"Yours very truly,

"Manager, Claim Department."

(Italics supplied.)

The check enclosed in the letter was as follows:

"Iowa State Traveling Mens Association
No. 328674
Claim No. 118608
Des Moines, Iowa, July 27, 1945
Pay to the order of Willie P. Flowers, Widow and Benef. of
James M. Flowers . . . . . . . . . . $500.00
[duly signed]
* * * The endorsement of this check acknowledges settlement in full
By the payee of all claims for indemnity under membership 241420
Because of *accidental injuries sustained* on or before this date."
(Italics supplied.)

On the back of the check, as it appeared as an exhibit, was the following:

"By this endorsement I hereby acknowledge payment in full of claim stated on the reverse side hereof.
Willie P. Flowers, Widow & Beneficiary of James M. Flowers."

The release enclosed in the letter was as follows:

#### "RELEASE

"RECEIVED from the Iowa State Traveling Men's Association, the sum of Five Hundred and No/100 ($500.00) Dollars for and as a settlement in full claim under Certificate of Membership No. 241420, on account of the death of James M. Flowers, which occurred on or about the 25th day of June, 1945.

"Certificate of Membership No. 241420 is hereby surrendered, with the acknowledgment that all claims thereunder are fully paid, satisfied and discharged.

"Dated at————, this——day of—————, 1945.

"Widow and Beneficiary of James M. Flowers, Deceased."

With respect to the physical condition of the insured prior to and at the time of his accident and death we have only the proofs of loss and the depositions of the witnesses and the eye-witness, and the expert opinion of Dr. Glomset. The beneficiary

died before the trial. She thought insured was in fair health. It is very probable at his age that his arteries were in some degree hardened. But the answer written in by some other person to the printed question, "State fully cause of any disability experienced by member during last two years" was not phrased by her. It is most unlikely that she replied "See Doctors statement Paragraph No. 11." Someone more familiar with the blanks than she aided in that answer. The unlikelihood that it was her volunteered answer is more evident when you turn to the "Doctors" answer at "No. 11.". It is: "Has had previous attacks of angina, indicating coronary disease." It was indeed a doctor's answer, in all probability, rather than that of a housewife of a nursery salesman. That so-called answer did not give her the benefit of the fair and reasonable inferences deducible from the facts as then known to the defendant, to which she was entitled.

Dr. Glomset, of Des Moines, an experienced physician in internal medicine and a specialist in the heart and circulatory system, who as a pathologist had performed around four thousand post-mortems, was a witness for plaintiff. He had no personal knowledge of the insured. He testified as an expert from facts told him for the first time at or about the time of the trial. But the defendant had full knowledge of these facts from its own investigation made before it sent the draft to Mrs. Flowers. It knew the circumstances of the collision and how its member was injured and how he was "shaken up terribly." It knew that his pains were in the lower abdomen and not in the heart or heart region, and that they were not reasonably or fairly indicative of a coronary lesion or thrombosis. Dr. Glomset was asked a hypothetical question, based upon the pertinent facts involved, if he had an opinion as to what caused the death of the insured. His answer was:

"There is not enough evidence to be certain, there are not enough facts in the evidence here to be absolutely—for anyone to say certainly what the man died of, but with the story of such an injury and with the patient's complaints such as they were, the most likely thing is that he sustained an injury to one of the internal organs in the abdomen that caused his

death. * * * That is the only opinion I could entertain from the facts given. * * * Q. Now, basing your answer upon the same hypothetical state of facts, did this man or did he not in your opinion die of coronary thrombosis? A. It is not likely that he did. He could have, but it is not as likely as that he died of the other condition. Q. What is the fact as to whether a person who dies of coronary thrombosis evidences pain in the region of his heart? A. At least ninety-nine per cent of persons dying from coronary thrombosis or dying from myocardial infarction, which is what happens, at least ninety-nine per cent of those have pain, pain under the breastbone, pain radiating to one or both shoulders or to the neck or some place else. * * * It manifests itself in their face and—the fact that they will stand very still and don't move, and the fact that they are in shock. Q. Do they ordinarily walk around for ten or fifteen minutes when they are about to die of coronary thrombosis? A. Not very often."

In cross-examination, he testified:

"I think Mr. Flowers' kidneys, spleen or liver may have been injured, all three of those organs are apt to rupture during such shakeup, if it was severe enough, without leaving any marks on the external surface of the body."

On redirect examination, he testified:

"Many people have coronary thrombosis without having angina pectoris. People have angina pectoris for years and they never die of coronary thrombosis. * * * Some people suffer from angina pectoris and die of other causes. You can have angina pectoris without an occlusion of the arteries. Many, many times you have angina pectoris without an occlusion. A person who is about to die from coronary thrombosis would not be apt to manifest a most severe pain in his abdomen by holding his hand to his abdomen. A severe pain is manifested in the chest bone and in the shoulders. Q. And he would be likely to put his hand to his heart, wouldn't he, or to his chest, rather than his abdomen? A. That would be right."

Defendant argues that on the question of a bona fide dispute

and the defendant's good-faith belief that the insured's death was not from bodily injuries, accidentally caused, independently and exclusive of all other causes, the facts on which that good faith is to be determined, must be limited to facts and information known to it when it sent the check to Mrs. Flowers—that it should not be charged with knowledge disclosed by Dr. Glomset's testimony.. Such argument is pertinent and sound, ordinarily, but it is not convincing in this case. The jury were entitled to consider, and no doubt did so, that the defendant had been in business since 1880; that 118,607 claims had been filed with and against the defendant before the beneficiary filed hers, and that a fair proportion of them probably involved the question of whether heart disease effected death; that its officers, doctors and medical advisers were well informed on that particular matter; that these representatives of the defendant had factual information that Dr. Glomset had, on which he based his opinion; that its expert medical advisers were probably fairly comparable in experience and ability to the witness and that their opinions on the facts ought to approximately coincide; and if the location of the insured's pain was indicative of its cause the defendant must have known that the chance was but one out of a hundred that heart disease was the cause of his death, instead of a rupture of his spleen, liver, or kidneys. Such a long chance would not in any reasonable probability generate good faith in a defense to an action for recovery under section 1 of Article II of the bylaws.

. I. The question of compromise and settlement or accord and satisfaction—the terms are used interchangeably, ordinarily —is one regarding which there is now, and has been, much confusion and conflict in the decisions of the courts. We will not attempt to reconcile them. Although the primary reason for the lack of harmony is apparent. The decisions of this court have been consistent and, we believe, sound.

"Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execu-

tion or performance." 1 C. J. S., Accord and Satisfaction, section 1.

See, also, Perin v. Cathcart, 115 Iowa 553, 557, 89 N. W. 12.

Accord and satisfaction is a contract. A new contract substituted for an old contract, which is thereby discharged, or for an obligation or cause of action which is settled. It must, therefore, have all of the essential elements of a valid contract. There must be competent parties. They are present in this case. There must be a proper subject matter, and a meeting of the minds of the parties with respect to the subject matter. The pertinent, relevant, and material facts, and the intentions and contentions of each party must be known and understood by the other, in order to make the settlement valid. The contract must be consummated fairly and honestly, without fraud, misrepresentation, duress, imposition, overreaching, or coercion or compulsion because of the inherent advantage of the dominant party because of the relationship of the parties.

It has been said that: "* * * accord and satisfaction ordinarily involves purely a question of intention; at the least, intention is a controlling factor, and so must be clearly manifested, and is to be determined from all the circumstances attending the transaction. There can, therefore, be no accord and satisfaction unless the creditor, or party receiving the thing or promise offered, understands, or, from the circumstances of the offer, or the acts or declarations with which it is accompanied, is bound to understand, that he takes it in full satisfaction of his claim." 1 C. J. S., Accord and Satisfaction, section 6.

The intention of the parties is an important factor. In Frame v. Cassell, 187 Iowa 1194, 1200, 175 N. W. 521, 523, the court said: "Whether there is accord and satisfaction ordinarily involves a pure question of intention, which * * * is ordinarily a jury question." And in Shull, Gill, Sammis & Stilwill v. McCrum, 179 Iowa 1232, 1238, 162 N. W. 759, 761, the court said: "Accord and satisfaction and settlement involve an aspect of the essentials of a contract and of the law of estoppel; in other words, there is no settlement and no

212

accord and satisfaction unless both parties act knowingly with intent to effect the accord." Each case must depend largely on its own facts. See, also, Goben v. Des Moines Asphalt Paving Co., 204 Iowa 466, 468, 215 N. W. 508; Zabawa v. Osman, 202 Iowa 561, 563, 564, 210 N. W. 602; Perin v. Cathcart, supra, 115 Iowa 553, 557, 558, 89 N. W. 12.

■ There can be no accord and satisfaction unless there is a valid consideration.

The death of Mrs. Flowers deprived the plaintiff of any direct evidence bearing upon her intentions or her understanding of the intentions of the defendant. These matters had not been talked over between them. There had been no discussion or controversy over what her rights were. She requested blanks for proof of loss from the defendant, and they were delivered to her, filled out and returned to the defendant. She was claiming under the certificate, of course, but the record does not disclose what amount she was claiming. Her husband had been injured in an automobile collision which smashed his car, and he was carried home and died shortly afterward. Her natural conclusion would be that the collision caused his death. Concerning her legal rights she probably had little knowledge. The check stated that it was in full payment of her claim. The courts have not been in agreement as to her rights under the circumstances, and it is improbable that she had any clear understanding of them or of what effect the acceptance and endorsement of the check would have upon them. She had been asked to sign the release and to surrender the certificate of membership. She did neither. Her declination must have had some purpose. It was significant and convincing evidence that she was not accepting the offer as made, and that it was not her intention to accept the $500 in full payment of the face of the policy. It is essential to the making of a contract that each party have knowledge and understanding of all relevant and material matters. The circumstances alone indicate that she was not so informed. This was not a simple dispute between two persons on even terms over the amount of an account for wages or merchandise. The insurer is always the dominant party in a transaction of this kind. It is always far better

informed respecting the facts and the law than the beneficiary, particularly the widow who has just lost her husband. His income has stopped and there is always the burial expense. Money is needed and an offer of $500 is a temptation that is often irresistible. The fact that the insurer seeks to force a settlement under those circumstances is a most significant item of evidence as to its good faith. It is a situation where the relationship between the parties is closely akin to a fiduciary one, and where the insurer should be most meticulous and conscientiously scrupulous to protect the rights of the beneficiary and to give every opportunity to fully establish her rights. It knew how little fact basis there was to the "attending" physician's answers. It knew the strong probability that the accident caused Flowers' death. It owed her the utmost fairness. Anything less was a breach of its duty. It knew that $500 was the least sum it owed her. It passed a resolution stating that she was entitled to that much. It did not owe her that much on condition or as a compromise. It conceded that it owed her that amount as "provided by the contract." It should have given it to her unconditionally, absolutely, and with no strings attached, but instead, without any previous discussion, it mailed her a check stating that if she accepted it she waived any further recovery, and implying that if she rejected it she could go to court. It was an unfair choice to which she should not have been put.

It is our conclusion that the essential elements of the claimed accord and satisfaction, namely, the meeting of the minds of the parties as to making the contract, and her intention to accept the accord, and the good faith of the defendant in any defense to her claim under section 1 of Article II of the bylaws were all questions of fact for the determination of the jury on the issue of accord and satisfaction.

II. It is a generally accepted principle of law that when a debtor owes a fixed, certain, due, sum of money, commonly called a liquidated debt, the offer of a less sum to the creditor, with a statement or notice that it is in full payment of the obligation, and its acceptance and retention by the creditor do not bar him from collecting the balance of the debt, in the absence of any new or additional consideration.

The reason being that the debtor is already under legal obligation to pay the full amount, and there is no consideration for a release or waiver by the creditor of the unpaid part of the debt. Where the debtor merely does what he is already bound to do, or that which the creditor was already entitled to, there is no consideration to support an accord and satisfaction. The reason back of the rule is that there is no benefit to the creditor, or detriment to the debtor, and the transaction is not a contract, with respect to the unpaid portion of the debt. This principle is said to have had its origin in a statement of Lord Coke in 1602, in the report of Pinnel's Case, in III Coke's Reports (Part V—117a) 238, 77 English Reprint 237.

A number of courts have expressed their disagreement with the rule, and have criticized it sharply. They have been astute, assiduous, and ingenious to so construe the rule as to give it the most limited application possible in order to avoid it. But in this state the rule has been consistently applied from the earliest days. Sullivan v. Finn, 4 (Greene) Iowa 544; Williams v. Cassidy, 237 Iowa 1042, 1048, 23 N. W. 2d 423, 427, and cases cited. It is established as a part of the common law and is almost uniformly followed where that law is recognized. State v. Massachusetts Bonding and Ins. Co., 1 Terry (Del.) 274, 283, 9 A. 2d 77, 81. In the case last cited, speaking of its disfavor, the court said:

*"Indeed, many cases have expressly indicated a policy of deliberately holding a claim as unliquidated so as to avoid the Rule which could not be directly denied.* Since we reluctantly feel compelled to recognize the Rule we are not inclined *to avoid it by strained and specious reasoning and at the expense of intellectual integrity."* (Italics supplied.)

The above-stated mental attitude of those courts, noted by the Delaware court, in their approach to the determination of the question before us, must be kept in mind in evaluating those particular decisions as precedents.

The rule or principle, as stated, applies where the claim is liquidated. According to Webster's New International Dictionary, a claim for debt or damages is "liquidated" in law

when the precise amount thereof is fixed or has been agreed upon. This is the commonly accepted definition of the term. State ex rel. Fletcher v. Naumann, 213 Iowa 418, 429, 239 N. W. 93, 98, 81 A. L. R. 483. The term "unliquidated" means simply not liquidated. Williston says (I Williston on Contracts, Rev. Ed., section 128): "An unliquidated claim is one, the amount of which has not been fixed by agreement or cannot be exactly determined by the application of rules of arithmetic or of law." A liquidated claim is the opposite.

 III. There is a rule or principle of law which stems from the rule which has come down from Pinnel's Case. It obtains in that class of cases where the parties do not agree upon the amount of the claim, that is, it is unliquidated, and there is a good-faith dispute as to the particular sum owing, or, the debtor may deny liability for any amount, and the parties by negotiations, and by compromise and mutual concessions, fairly conducted, settle the claim for an amount less than the creditor originally claimed, and the agreement for the settlement or accord is executed by payment or other satisfaction. Under such circumstances the creditor is precluded from thereafter collecting the part or balance of the debt which he thus waived. Such a settlement is an accord and satisfaction.

A typical example of the rule is found in Sparks v. Spaulding Mfg. Co., 158 Iowa 491, 139 N. W. 1083. Defendant herein relies upon it but it is not applicable. There the plaintiff performed services for the defendant. The rate or amount of compensation was not discussed or agreed upon in advance. Their ideas of the value of the services upon their conclusion were widely divergent. But after much discussion and some legal advice, the offer of the defendant to settle was accepted and paid. Later the plaintiff sued for the unpaid balance of his original claim. This court reversed a judgment for plaintiff and held there was an accord and satisfaction.

 While the application of this rule usually arises where the claim is unliquidated it is not essential that this be so. For the amount of the claim may be liquidated, but the debtor may insist that though he does not question the amount of it he denies any liability or obligation to pay any part of it. Such a claim is compromisable. See I Williston on Contracts, Rev.

Ed., supra, section 128; Simms Oil Co. v. American Refining Co., Tex. Comm., 288 S. W. 163.

IV. There is another line of cases where the claim is single and involves but one obligation on the part of the debtor, but he and the creditor are not in agreement as to the amount of it. The debtor concedes that he owes a specific, stated amount but no more. The dispute is terminated by the debtor's paying that specific sum to the creditor who accepts it and delivers a release of his claim in full. The decisions and authorities are fairly evenly divided as to whether this is a valid accord and satisfaction. The theory on the part of the debtor is that the claim is single or a unit, and even though he concedes his liability for a specific part of the claim, he contends that the claim as a whole is unliquidated and disputed, and the creditor's acceptance as payment in full of his claim, of the specific sum which the debtor admits is owing and due, constitutes a valid accord and satisfaction. The theory of the creditor is that where the debtor pays only the exact sum which it is admitted he owes he does no more than he is obligated by law to do, and satisfies the debt pro tanto, but the payment is no consideration for the agreement to release the balance. The debtor in such case waives no right, concedes nothing, and does no act that he is not absolutely bound to perform. Of the debtor's theory the court in State v. Massachusetts Bonding and Ins. Co., supra, 1 Terry (Del.) 274, 283, 9 A. 2d 77, 82, said:

"It seems illogical to attempt a distinction between the payment of part of a claim, the whole of which is conceded, and the payment of the conceded amount where only the balance is in dispute."

It is the contention of the defendant at bar that while its payment of the check for $500 was not an admission of its absolute indebtedness for that amount, if it is held to be such, it, nevertheless, constituted a valid accord and satisfaction, under the debtor theory, above noted, in the single-obligation class of cases.

Pro and con decisions of the single-claim class of cases referred to in this division are cited and discussed in annotation

112 A. L. R. 1219, 1221 et seq. See, also, 1 C. J. S., Accord and Satisfaction, section 34; 1 Am. Jur., Accord and Satisfaction, section 64.

▉ V. The debtor-theory of the single-claim class noted in Division IV hereof has no application in this case. It is true that defendant's liabilities are based on one instrument —the certificate of membership. It is true that it is liable under either section 1 of Article II of the bylaws, or under paragraph H of the bylaws, and not under both. Of course, if a payment under H is treated as a payment under the first-mentioned bylaw—which we will hereinafter refer to as Article II—it must be credited on any claim thereunder.

Any liability under the certificate must result from an accident, whether it be for loss of life or for injury resulting only in physical disability. Insofar as it paid for a death loss it was life insurance. Defendant had two liabilities or obligations under the contract. They were distinct and separate. They were based on different conditions and facts, and accrued from different causes. Its money liability for each was different. Under Article II it was $5,000. Under paragraph H it was $500. The fact that the latter sum was computed as a fractional part of the other is of no consequence.

There is considerable argument on each side as to whether the liability or claim under Article II is liquidated or unliquidated. Plaintiff argues that it is liquidated, and defendant argues that it is unliquidated. Keeping in mind that these two terms refer only to the amount of a claim in money, it must be said that the claim is liquidated. Its amount was fixed by the insured and the insurer by the terms of the certificate at $5,000. Neither party claims that it is more or less or some other amount. Each party agrees that if the defendant is liable, the liability is $5,000. While the defendant in a sense disputes the amount when it denies owing any amount under Article II, in reality it is denying liability, and not any particular amount. See Barr v. Clinton Bridge Works, 179 Iowa 702, 709, 161 N. W. 695; Graham v. New York L. Ins. Co., 182 Wash. 612, 47 P. 2d 1029. However, the point is immaterial, since, as we have stated above, a liquidated claim may be disputed and settled by accord and satisfaction.

What we have said just above with respect to a claim under Article II applies also in every detail to a claim under paragraph H. That amount, also, was fixed in the certificate by the parties thereto. It is a liquidated claim. But with respect to a claim 'under H, it is important that it was liquidated and that neither the amount nor the liability to pay it has ever been disputed or denied by. defendant.

While defendant contends that on the death of Flowers it was confronted with three alternatives—to deny liability altogether, to pay under Article II, or to pay under H—there was no reasonable probability or basis for the first alternative. Its conduct proves that if it ever contemplated it, it was not for long. It had two alternatives—to pay $5,000 or to pay $500. Without any communication with Mrs. Flowers, or any dispute, objection, controversy, or quibble, by action of its board of directors, *"on the basis provided by the contract,"* after full investigation it admitted its liability for $500, and promptly delivered it to Mrs. Flowers by mail. It is true that it imposed an unwarranted condition to the acceptance of the check, but that in no way qualified or detracted from the definiteness and the force and effect of its acts in admitting the liability. Although Mrs. Flowers indorsed the check and collected the money it was for the jury to say whether in so doing she intended to release the balance of $4,500, or to retain it as money which was conceded by defendant to be her property, and to credit it on any balance recoverable. It has been argued by some courts whose inventive genius in devising ways and means to nullify the rule in Pinnel's Case is marked, that money so paid by a debtor which it expressly admits is owing and due the creditor does not belong to the creditor, but is the property of the debtor, who may burden its payment with any conditions that it may please to. It may be true that the debtor could have retained this money to do with as he pleased until compelled by legal action to pay the creditor. It may also be true that the creditor owned no defined portion of˙the debtor's property. But when the debtor meets his obligation to the creditor by delivering to him the money he has no right to clog its acceptance with unjustified burdens.

Having admitted that it owed the beneficiary a liquidated debt of $500, that debt could be satisfied in money only by the payment of $500. That was all the defendant paid her. There was not an additional penny which the plaintiff received as consideration for her release or satisfaction of the balance which she claimed to be her due under the certificate—the sum of $4,500. The payment of that sum was not a compromise. It was not a concession on the part of the insurer. It gave only the sum which it admitted was due Mrs. Flowers. She received only a sum which was hers. It had been paid for by the premiums, dues, or assessments received by the company from her husband. It was no new or additional benefit to her, and its payment added no burden or detriment to the association. There was not the slightest consideration of any kind, whether old, new, collateral or additional, for the release, payment, compromise and settlement or accord and satisfaction of the unpaid portion—or $4,500—of the full indemnity under the certificate.

Since there was no consideration for the purported agreement of accord· and satisfaction it was void and of no force and effect and did not bar the action of plaintiff for the recovery of $5,000 under Article II of the certificate, less the payment of the $500. In sustaining defendant's motion for judgment notwithstanding the verdict the court erred to the prejudice of the plaintiff.

There is sound authority and precedent for our conclusion. Our decision in Barr v. Clinton Bridge Works, supra, 179 Iowa 702, 709, 710, 161 N. W. 695, 697, is clearly in point, and sound law. In it there was a single contract for services between plaintiff and defendant for a term of five years for $6,000 a year, payable $300 a month and $2,400 in a lump sum at the end of each year. It was not a case of two contracts, but of one contract definitely fixing the amounts and times of payment. The contract was made about January 1, 1910. The first year the full $6,000 was paid as agreed. During the following two years only the $300 a month was paid. The contract was dissolved by mutual agreement on December 1, 1913. About this time a check for two months' pay was given plaintiff marked "in full," with the remark by defendant that it was

all that was owing. Plaintiff protested about the balance of $4,800 but cashed the check and sued for $4,823, the unpaid portion of his salary, and recovered judgment.

In affirming the judgment the court held that there was concededly a contract for $300 a month. The only material dispute was as to the agreement to pay the additional amount of $2,400 at the close of each year. The court said:

"Now the amount actually paid was not in dispute, and, such being the case, we are of the opinion that the defendant, in giving its check therefor, stating the same to be 'in full,' cannot plead or rely upon its acceptance as a satisfaction or discharge *of another item or claim which is the subject of dispute between him and the payee* * * * The payment of an admitted or liquidated claim furnishes no consideration for an accord and satisfaction *of another claim which may be the subject of dispute between the parties.* * * * Any rule which would allow the creditor's acceptance of payment of an admittedly just demand to work an estoppel against his right to a hearing upon a claim which is not admitted, would work manifest wrong, and be without support in sound principle." (Italics supplied.)

While the language above italicized standing alone might indicate that the court was referring to two entirely different and separate claims, the fact is that the $2,400 item was but a payment upon the same contract for the same services for which the monthly checks of $300 had been given. It is in fact a holding that the payment of an admittedly due part of an unliquidated, disputed, single-claim obligation, for which part payment a release of the entire claim was given, does not bar the creditor from recovering the disputed balance. The discussion goes further than we are required to go in this case to sustain the creditor, for here there are two separate obligations.

In American L. Ins. Co. v. Williams, 234 Ala. 469, 472, 175 So. 554, 555, 556, 112 A. L. R. 1215, the life insurance policy contained a clause that if insured died within nine months after the delivery of the policy from certain specified diseases, the liability was limited to a return of the premiums paid. The insured died within the time limited. The defend-

ant claimed that insured died from one of the excepted diseases and induced the beneficiary to sign a statement to that effect and also a release in full of all claims against the company under the policy. For this it returned to her $1.20 which had been paid on premiums. She sued for the principal amount payable under the policy and recovered judgment. The defense relied on was the claimed accord and satisfaction effected on the day following his death. Plaintiff alleged, and offered evidence in support thereof, that the insured had not died of the specified disease. In holding that there was no sufficient consideration for the settlement, the court said:

"The authorities reason that the payment of an amount admitted to be due in respect to one feature of a transaction cannot be the basis of an agreement to forego another feature of it, though the latter is disputed or unliquidated Brent v. Whittington, 214 Ala. 613, 108 So. 567; 1 Corpus Juris Secundum, Accord and Satisfaction, p. 502, §29(2). So that plaintiff was not precluded from her claim now made that insured did not die from a pulmonary disease, because of the alleged accord and satisfaction, whether it was procured by fraud or not. It was not based on sufficient consideration."

This case also holds that a return of the money paid in settlement was not necessary.

In Weidner v. Standard L. & Acc. Ins. Co., 130 Wis. 10, 15, 110 N. W. 246, 248, action was taken by the widow-beneficiary upon an accident policy, issued to her husband, providing for the payment of $3,000 for accidental death, subject to numerous exceptions, any one of which reduced the liability to one tenth of the aforesaid amount. But the policy covered death from an assault committed for the sole purpose of robbery. The assaulter forcibly took the insured's rubber boots from him, and when he resisted, beat him to death with one of them. The company paid the widow $300 and took a release from her for all liability, upon the theory that one of the exceptions in the policy prevailed. She sued for $2,700 and the trial court granted a nonsuit. One of the defenses was the claimed accord and satisfaction. In reversing the court said:

"The answer admits that the $300 was due to the plaintiff under the tenth clause of the policy, and pleads the same. as an accord and satisfaction. The difficulty with such contention is that it seeks to make the payment of what the defendant thus admitted to be due and payable a consideration for the alleged settlement of the claim controverted by the defendant. It is well settled in this and other states that part payment of an admitted debt is no consideration for an agreement not to enforce the collection of the balance of such debt. [Citing decisions.] We must hold that the defense alleged of an accord and satisfaction has not been established; certainly not by the uncontradicted evidence, as held by the trial court."

 It is the general rule that the payment of an undisputed claim is no consideration for the discharge or settlement of another disputed claim. It is a sound principle. The reason for the rule is the fact of the separation and the independence of the claims. Whether they arise in or out of the same contract or transaction is not ordinarily a material or controlling factor. See Walston v. F. D. Calkins Co., 119 Iowa 150–152, 93 N. W. 49; Barr v. Clinton Bridge Works, supra, 179 Iowa 702, 161 N. W. 695; Gross v. Wallen, 182 Iowa 429, 431, 165 N. W. 993, 994. As said in the last-cited case:

"If a check is given because the amount thereof is confessedly due, its acceptance settles only what needs no settlement, and cannot be enlarged to be the consideration for an agreement not to enforce other, though disputed, demands."

The following "New text," numbered section 64.1, appears in the 1947 Pocket Supplement to 1 Am. Jur., Accord and Satisfaction (page 20); supplementary to section 64 thereof, on page 251:

"Where there are two claims, dependent on different facts, one of which is undisputed and the other of which is disputed, the payment of the undisputed claim does not bar the right to sue for and recover on the disputed claim. The fact that the undisputed claim and the disputed claim or claims arise under the same contract does not affect the application of the rule, as where claims arise under separate provisions of an in-

surance contract. * * * For example, payment to the beneficiary of a life insurance policy of the amount of premium received, to which the insurer claims its liability is under the circumstances limited, is not such consideration as will support an accord and satisfaction of the beneficiary's claim."

In Vaughn v. Conran, Mo. App., 4 S. W. 2d 495, 496 (reaffirmed on the point in 20 S. W. 2d 968) plaintiff had a building contract in which his compensation was ten per cent of total costs with reimbursement for incidental expense on his part for labor and material. Payment of the latter item, the amount of which was admitted, by a check stating it was in full of all charges, was rightly held not to be an accord and satisfaction of the percentage charge, the amount of which was disputed.

It is also a rule generally followed that where the debtor is subject to two potential liabilities, as in this case, but one of which may be enforced by the creditor, the payment of one which the debtor admits to be owing, conditioned upon the release of the other, upon which the creditor relies for recovery, affords no consideration for the claimed settlement thereof. On this subject the annotator in 112 A. L. R. 1241 et seq. reviews the decisions, involving "mutually exclusive claims", and speaks of them as "those cases in which the two asserted claims are mutually inconsistent, in that the claimant cannot succeed on both claims. Most of these, it will be observed, are cases involving insurance contracts" and states that "the payment of an undisputed claim is generally no consideration for the discharge of another inconsistent claim which is disputed."

These mutually exclusive claims may be in various kinds of contracts including life insurance policies and accident insurance policies, but the rule stated has the same application in all of them.

Some of the decisions in which the rule has been applied are here noted: Woodmen of World L. Ins. Soc. v. Smauley, 1941, Tex. Civ. App., 153 S. W. 2d 608, 612 (rehearing denied), (payment of death benefit and release in full held no bar to double indemnity recovery for accidental death). (The holding

was reaffirmed in W. O. W. L. Ins. Soc. v. Brown, Tex. Civ. App., 164 S. W. 2d 190.) These two decisions were cited and the rulings therein approved in W. O. W. L. Ins. Soc. v. Armstrong, 1943, Tex. Civ. App., 170 S. W. 2d 526, 528 (rehearing denied); American Nat. Ins. Co. v. Reed, 26 Ala. App. 350, 353, 160 So. 543 (certiorari denied 230 Ala. 221, 160 So. 546). In it, it was sought to bar the double-indemnity accident liability because of payment of the death loss. Jefferson Standard L. Ins. Co. v. Lightsey, 4 Cir., S. C., 49 F. 2d 586, 589 (double-indemnity clause). Knights Templars and Masons L. Ind. Co. v. Crayton, 209 Ill. 550, 70 N. E. 1066, held that acceptance of assessments paid under suicide clause did not bar recovery for death loss. Buel v. Kansas City L. Ins. Co., 32 N. M. 34, 250 P. 635, 52 A. L. R. 367 (double-indemnity accident clause in life insurance policy). Graham v. New York L. Ins. Co., 182 Wash. 612, 620, 622, 47 P. 2d 1029, 1033. Policy contained suicide and accident clauses. The court said:

"Where the debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor and its acceptance by the creditor, even though tendered as payment in full of a larger indebtedness, do not operate as an accord and satisfaction of the entire indebtedness, because there is no consideration therefor. [Citing cases.] * * * the controlling factor of the case is that there was no dispute as to the amount that appellant was required to pay under either feature of the policy. As to the face amount of the policy, there was no dispute of any kind whatever. As to the double indemnity, the only dispute was whether any liability at all attached thereunder. If death was accidental and not suicide, then the appellant would be obligated to pay the double amount. On the other hand, if death was the result of suicide, then the company was obligated to pay only the face amount of the policy. The amount being certain and undisputed as to either alternative, the claim must be classed as the equivalent of a liquidated claim. No new or additional consideration having been given for tendering less than the amount due for the greater liability, there was no accord and satisfaction."

Under the record in this case the decisions rendered and the principles of law applied and followed in Barr v. Clinton Bridge Works, supra, 179 Iowa 702, 161 N. W. 695, and the other cases relied upon herein are applicable to and sustain our decision herein. We have no fault to find with the decisions of this court relied upon by the defendant, but in our judgment they do not aid it. We have already referred to Sparks v. Spaulding Mfg. Co., supra, 158 Iowa 491, 139 N. W. 1083. Ferguson v. Grand Lodge, 174 Iowa 61, 156 N. W. 176, Schultz v. Farmers Elevator Co., 174 Iowa 667, 156 N. W. 716, and Graf v. Employers Liability Assur. Corp., 190 Iowa 445, 180 N. W. 297, were decided rightly, but the resulting decisions do not rule this case. In the first case the certificate called for a specific stated sum, but by various changes in the bylaws this amount was reduced and burdened so that the death loss became a matter of arithmetical computation. The beneficiary was apparently unaware of these facts and thought she was entitled to the face of the policy. She was paid exactly the amount due her by the computation without any deduction or discount, and after a full and fair discussion she accepted the amount.

The Schultz case was simply a dispute over a verbal agreement as to the price that was to be paid for soft corn. After full discussion plaintiff was paid the full amount that the corn brought on the market, less elevator charges. In the Graf case, because of the misrepresentations of the insured, there was doubt whether there was any liability. But he was paid and accepted what he was entitled to on the facts as they were—had they been truthfully stated. As sometimes occurs there was comment on the law that was unnecessary in one or more of those opinions, including the Sparks case.

It has always been and is the policy of this court to encourage the settlement of controversy and litigation, where all parties have an opportunity to inform themselves of the facts and of their rights and obligations, and a settlement is fairly made without undue pressure or overreaching. Compromises and accords fairly made are most desirable and reduce litigation. But as said in the Buel case, supra, 32 N. M. 34, 43, 250 P.

635, 638, we should not "smother under a rule of convenience many meritorious causes of action." This court has expressed itself in the matter in Kelly v. Chicago, R. I. & P. R. Co., 138 Iowa 273, 280, 114 N. W. 536, 539, 128 Am. St. Rep. 195:

"While it is and should always be the policy of the courts to encourage the amicable settlement of all controversies, it is even more a matter of good policy and good morals to stamp the law's disapproval upon settlements which bear the taint of fraud and undue advantage."

Settlements hastily effected without discussion by checks "in full" in the nature of ultimatums compel court action. One cannot examine the great mass of appellate cases, a very great number against insurance companies seeking to sustain accord and satisfaction agreements, and reach any other fair conclusion.

The payment of the $500 was not a valid consideration for the release of the claim of the beneficiary, and of the plaintiff to recover the balance of $4,500 under section 1 of Article II of the bylaws. Whether there was an accord and satisfaction and the establishment of its various essential elements were all questions of fact for the determination of the jury, and they were rightly submitted to the jury with the other issues. The evidence was sufficient to sustain the verdict. It was the express purpose of the trial court to submit the case to the jury so that a complete record might be submitted to this court to enable it to make a final order in the event of a reversal instead of sending the case back for retrial. It is our conclusion that the sustaining of defendant's motion for judgment notwithstanding the verdict was reversible error. The issues were all submitted to the jury and determined by it. The ends of justice would not be served by a new trial. The judgment is therefore reversed and the cause is remanded to the district court with directions to set aside the judgment for the defendant, and against the plaintiff for costs, which was entered after the sustaining of defendant's motion for judgment, and to reinstate the judgment for the plaintiff and against the defend-

ant as of the date on which it was rendered and entered on the verdict.—Reversed and remanded.

OLIVER, C. J., and GARFIELD and HAYS, JJ., concur.

MULRONEY, J., specially concurs.

SMITH, HALE, and MANTZ, JJ., dissent.

MULRONEY, J. (specially concurring)—I concur in the majority opinion but would like to add the following:

The authorities seem to agree that the two provisions in an ordinary life insurance policy, with double indemnity in case of accidental death, are separable and the beneficiary can accept the amount due upon death and not be foreclosed from recovering the added amount due upon proof of accidental death. I think the same rule should apply in this case for I feel this is a policy of insurance on life with two clauses for payments of different benefits based on the cause of death of the insured.

The rule stated in 44 C. J. S., Insurance, section 3, is:

"While it has been held that an accident policy payable in the event of death by accident is clearly distinguishable from a life policy, it has also been considered that accident insurance is akin to life insurance. Essentially the same principles underlie, and the same rules govern both kinds of insurance, and, indeed, where an accident policy, in addition to the usual provision for indemnity against loss by reason of bodily injury by accidental causes, stipulates for the payment of a certain sum to a person named in case of the death of insured by accident, it is, in that aspect, a 'life insurance policy' or 'policy of insurance on life' as those terms are used in statutes relating to such policies."

In 29 Am. Jur., Insurance, section 1154, it is stated:

"It is * * * clear * * * that an accident policy, in respect of the amount to be paid on death, is essentially a policy of life insurance."

In Logan v. Fidelity & Cas. Co., 146 Mo. 114, 123, 47 S. W. 948, 950, the opinion states:

"When a policy covers loss of life from external, violent and accidental means alone, why is it not insurance on life? Such a provision incorporated in a general life insurance policy admittedly would be insurance on life then why less insurance on life because not coupled with provisions covering loss of life from usual or natural causes as well?"

It is significant that the above case was cited with approval in Tuttle v. Iowa State Trav. Men's Assn., 132 Iowa 652, 104 N. W. 1131, 7 L. R. A., N. S., 223, a case involving the policy of the same defendant as the instant case.

In Geisler v. Mutual Benefit Health & Acc. Assn., 159 Kan. 452, 454, 155 P. 2d 435, 437, the opinion states:

"Preliminary to any discussion it may be noted that the policy of insurance here involved is what is termed an accident and health policy, but which provides benefits for accidental death. Only the latter benefits are here involved and the case is to be determined by rules applicable to life insurance cases."

This court has announced the same rule in a case involving an accident policy with death benefits. We said in Wahl v. Inter-State Business Men's Acc. Assn., 201 Iowa 1355, 1360, 207 N. W. 395, 397, 50 A. L. R. 1374:

"An accident policy, in respect to the amount to be paid upon death, is essentially a policy of life insurance. Logan v. Fidelity & Cas. Co., 146 Mo. 114 (47 S. W. 948); Johnson v. Fidelity & Cas. Co., 184 Mich. 406 (151 N. W. 593); Zimmer v. Central Acc. Ins. Co., 207 Pa. St. 472 (56 Atl. 1003); Gatzweiler v. Milwaukee Elec. R. & L. Co., 136 Wis. 34 (116 N. W. 633, 18 L. R. A. [N. S.] 211)."

The index of the decisions of this court shows about thirty cases involving accident policies issued by the defendant company. A reading of the opinions would indicate the policy involved is the same or similar to the one here sued on. I will not review the cases but from my examination of these opinions it seems clear that in all cases where death benefits were involved we applied the general law of life insurance. In particular, see Tuttle v. Iowa State Trav. Men's Assn., supra, and Mochel

v. Iowa State Trav. Men's Assn., 203 Iowa 623, 213 N. W. 259, 51 A. L. R. 1327.

As a life insurance policy it is similar to the double indemnity cases cited in the majority opinion. This policy just reverses the clauses, in that, provision is made for the large amount first, and for the small amount if something else caused or partly caused the death. Suppose the policy read that the association would pay $500 for accidental death where heart disease was a contributing factor and ten times that amount for accidental death where heart disease was not a contributing factor. Surely the payment of $500 upon proof of an accidental death, which amount the company would owe in any event, would not bar a claim for the balance if it could be shown heart disease was not a contributing factor. To hold otherwise would not be treating such a policy as "essentially a policy of life insurance" as we held in the Wahl case, supra. The order of the separable clauses is immaterial.

In the case of American L. Ins. Co. v. Williams, 234 Ala. 469, 175 So. 554, 112 A. L. R. 1215, the order of payment was as here, in that the policy provided for a stated amount but further provided the liability was limited to the premium paid if the insured died of pulmonary disease within nine months from the date of the policy. The insured died within the nine-month period. It was held the payment of the premium to, and the signing of a receipt in full for all claims, etc. by, the beneficiary did not amount to accord and satisfaction and suit could be maintained for the face of the policy on the ground that insured did not die of a pulmonary disease.

I think this court should continue to hold accident policies, in respect to the amount to be paid upon death, as policies of insurance on life and apply the general law of life insurance, which would mean the amount payable in any event upon proof of accidental death, would not afford a basis for accord and satisfaction, if rights to higher benefit payments under other clauses can be established.

I am authorized to state that OLIVER, C. J., and BLISS, GARFIELD, and HAYS, JJ., join in this special concurrence.

SMITH, J. (dissenting)—I cannot allow the majority opinion as written to go into our reports unchallenged. It is I believe subject to two sound criticisms: First, it unjustly imputes bad faith to defendant association; and second, it announces what I believe to be an incorrect statement of the law of accord and satisfaction.

I. The imputation of bad faith is not only unsupported but actually denied by the record. The injury to insured occurred June 25, 1945, in Georgia. Under date July 2, 1945, the beneficiary named in the Membership Certificate executed the proof of loss accompanied by "Attending Physician's Statement", "Undertaker's Statement" and "Statement of Disinterested Neighbor or Friénd."

The record does not show when they were received by defendant in Des Moines at its home office. The proof of loss, sworn to by the beneficiary, plaintiff's intestate, stated that the accident happened at 4:45 p.m. and that insured died at 6 p.m. and that he was in "fair" health at time of injury.

In answer to the question: "State fully cause of any disability experienced by member during last two years," the reply was: "See Doctors statement Paragraph No. 11." This paragraph 11, in answer to the question: "State contributory causes of death, if any, in order of importance," answered: "Has had previous attacks of angina, indicating coronary disease."

The proof of loss twice states that there were no visible bodily injuries but there was "extreme shock" and that the physician was called immediately after the injury. To the inquiry for name and address "of all physicians who attended member after member received injury which caused his death" the proof answered:

"Dr. W. A. Mendenhall, Chamblee, Ga." (the doctor who made the "Attending Physician's Statement").

The physician's statement, in addition to the statement at paragraph 11 above quoted gave the following:

"7. State in full cause of death of deceased. Coronary thrombosis. Shock from auto accident about 1 hr. before death.
\* \* \*

"10. Did the injury of itself independent of *all other causes* produce death of deceased? It is felt that the accident and subsequent nervous shock initiated the fatal coronary attack. * * *

"13. Did deceased have any * * * physical impairment? See 11 above.

"14. Did the condition described in 13 contribute to death? Yes."

I have set these matters out, not as bearing on the question of the cause of death, but to show what information and claim was made by the beneficiary to defendant association as bearing on its good faith in the transaction.

In spite of the innuendo and hints to the contrary in the majority opinion, there is no slightest evidence that defendant had anything to do with the selection of, or any connection with, Dr. Mendenhall; or had anything to do with the making of the proof of loss. I think it likely the beneficiary relied on the physician whom she presumably called and who says he had known Mr. Flowers one year. Nor was there any sound reason for defendant to doubt the doctor's conclusion as to the real cause of death. The fine spun theories later advanced by the expert Des Moines witness for plaintiff at the trial were not in the picture when defendant's Manager of Claim Department wrote the letter of July 27, 1945, set out in full in the majority opinion, enclosing the check which the beneficiary cashed, and the proposed release which she did not sign.

The letter is straightforward and clear. It honestly gave beneficiary the benefit of what seemed to be the real situation. It is incredible that its recipient was misled. It conformed exactly to her own and the physician's and the disinterested neighbor's belief that while the accident caused the death, it was contributed to by the heart condition reported in the proof. It does mention "our own investigation" and there is nothing to show what that investigation revealed. But it cannot be assumed that plaintiff's attorneys failed to produce and show whatever evidence there was to discover by such investigation. Certainly that evidence would not have justified a tender of

the face of the policy by the claim manager. He had a duty to the association he represented.

There is no evidence of any kind to justify a speculation that Mrs. Flowers thought she was receiving a part payment of $500 on the full face of the policy. The suggestion that she may have thought so is slightly ridiculous, if I may be pardoned for saying so. No such interpretation could be placed on the letter and its enclosures. For aught that appears Mrs. Flowers was a person of ordinary intelligence and able to read the English language. We should assume she was honest and that when she accepted and cashed the check for $500 she had no secret intention of claiming more. What may have happened to change her intention later we have no way of knowing.

The majority says the relationship between the beneficiary and the insurer is "closely akin to a fiduciary one, and where the insurer should be most meticulous and conscientiously scrupulous to protect the rights of the beneficiary and to give every opportunity to fully establish her rights. * * * It knew the strong probability that the accident caused Flowers' death."

No authority is cited for this new statement of the relationship between beneficiary and insurer. I have never before heard it announced. It is my understanding the parties were dealing at "arm's length." Defendant owed to the beneficiary the duty it would owe to any other person with whom it dealt—the duty to deal uprightly. This, I submit, the defendant did under this record, and it assumed Mrs. Flowers was doing the same. She and the physician were in a far better position than was defendant to know "how little [or how much] fact basis there was to the 'attending' physician's answers." There is nothing here to impeach either his honesty or his ability.

Again it is said in the opinion: "It [defendant] should have given it [the $500] to her unconditionally, absolutely, and with no strings attached * * *." This seems to me to indicate an entirely distorted conception of the contract. It brings us to a discussion of the question of accord and satisfaction.

II. The contract here is a single, indivisible contract not similar to the familiar life policy with provision for double

indemnity in case of death by accident. These latter policies are held to be in effect two contracts. Payment of the life insurance is not inconsistent with possible liability upon the accident feature. That is not the case here as I shall demonstrate.

The whole difficulty in application of the principle of accord and satisfaction is the matter of consideration. An accord, in legal contemplation, is a new contract, necessitating a meeting of the minds upon a new consideration. Immediately there arises the inquiry, was the original demand for a "liquidated" amount, that is, does the debtor owe a definite, determined sum, if he owes anything—does he owe all or none? In such a case, payment of a lesser amount cannot constitute a consideration for an accord unless there was an *honest dispute* as to whether *anything* was due. If there was, the accord might be supported by a consideration in that each party yields some part of his contention in order to settle the controversy.

· That is the familiar pattern where the claim is "liquidated." It is not applicable to our situation here. Plaintiff's claim, under what seems to be the rule in Iowa, was *unliquidated*. This court has said that even "if it is admitted that one of two sums is due, but there is a dispute as to which is the proper amount, the demand is unliquidated within the meaning of accord and satisfaction." Schultz v. Farmers Elevator Co., 174 Iowa 667, 675, 156 N. W. 716, 719, citing Greenlee v. Mosnat, 116 Iowa 535, 90 N. W. 338, and Sparks v. Spaulding, 158 Iowa 491, 139 N. W. 1083.

In the cited Greenlee case it is said:

"As related to the subject of accord and satisfaction, the term 'liquidated,' * * * means one where the amount due has been ascertained and agreed upon by the parties, or is fixed by operation of law. [Citing authorities.] When not so determined, it is the subject of compromise. To avoid any confusion in the definition of the word, the books quite generally refer to disputed as well as unliquidated claims as those which may be adjusted without full payment." (At page 538 of 116 Iowa, page 339 of 90 N. W.)

The case then quotes approvingly from Nassoiy v. Tomlinson, 148 N. Y. 326, 330, 42 N. E. 715, 716, 51 Am. St. Rep. 695:

"A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction."

That this is the general rule seems well established. This same language of the New York court is quoted with evident approval by the United States Supreme Court in Chicago, M. & St. P. Ry. Co. v. Clark, 178 U. S. 353, 367, 20 S. Ct. 924, 44 L. Ed. 1099. The principle is announced in 1 Am. Jur., Accord and Satisfaction, section 61 (citing the New York case), and in 1 C. J. S., Accord and Satisfaction, section 32c(2) (citing among various other cases, Schultz v. Farmers Elevator Co., supra). See, also, Ferguson v. Grand Lodge, 174 Iowa 61, 74, 156 N. W. 176; Addison Miller, Inc. v. American Cent. Ins. Co., 189 Minn. 336, 249 N. W. 795, 797, 798.

I cannot doubt under this record that plaintiff's claim was unliquidated upon the death of Mr. Flowers. The amount due, if any, had not been "ascertained and agreed upon by the parties," or "fixed by operation of law." Greenlee v. Mosnat, supra. The proof of death constituted an admission by the beneficiary against interest. Noble v. United Ben. L. Ins. Co., 230 Iowa 471, 483, 297 N. W. 881. When it was submitted three alternatives confronted defendant: to deny the claim in toto, pay it in full, or concede partial liability and tender payment of one tenth of the full amount. There was abundant reason on the showing submitted for an honest, good-faith difference of opinion as to the last two. The subsequent verdict of a jury does not prove a defense was not made in good faith. Greenlee v. Mosnat, supra; 1 C. J. S., Accord and Satisfaction, section 32b(2), note 17; Graf v. Employers Liability Assur. Corp., 190 Iowa 445, 451, 180 N. W. 297.

I think the claim was unliquidated and honestly in dispute.

III. I come next to the more controversial question of consideration. Here indeed we meet conflict of opinion. Even the original principle that "where a *liquidated* sum is due, the payment of a less sum in satisfaction thereof, though accepted

as satisfaction, is not binding as such for want of consideration" has come in for much criticism.

In Chicago, M. & St. P. Ry. Co. v. Clark, supra, the court says:

"The rule * * * has been much questioned and qualified" (citing cases) and goes on to say: "The result of the modern cases is that the rule only applies when the larger sum is liquidated, and when there is no consideration whatever for the surrender of part of it; and while the general rule must be regarded as well settled, it is considered so far with disfavor as to be confined strictly to cases within it." (At pages 364, 365 of 178 U. S., page 928 of 20 S. Ct., page 1105 of 44 L. Ed.)

See Tanner v. Merrill, 108 Mich. 58, 61, 65 N. W. 664, 665, 31 L. R. A. 171, 62 Am. St. Rep. 687, where it is said:

"The general rule is a technical one, and there are many exceptions. It has been said that it 'often fosters bad faith,' and that 'the history of judicial decisions upon the subject has shown a constant effort to escape from its absurdity and injustice.' [Citing cases.] Again, it is said to be 'rigid and unreasonable,' and 'a rule that defeats the expressed intentions of the parties, and, therefore, should not be extended to embrace cases not within the letter of it.' Wescott v. Waller, 47 Ala. 492; Johnston v. Brannan, 5 Johns. 268; Simmons v. Almy, 103 Mass. 35."

The supreme court of Alabama says: "But judicial policy, as well as public policy, favors the upholding of compromises deliberately and understandingly made." Ex parte Southern Cotton Oil Co., 207 Ala. 704, 706, 93 So. 662, 664, 665.

Our own court has said the rule is "purely technical, and subject to many exceptions which the courts have ingrafted upon it from time to time in order to avoid to some extent the injustice which is recognized as frequently resulting from its strict application." Engbretson v. Seiberling, 122 Iowa 522, 525, 98 N. W. 319, 320, 64 L. R. A. 75, 101 Am. St. Rep. 279.

The real difficulty arises when we have as here to inquire whether payment of the *conceded* part of a single, indivisible,

*unliquidated* or *disputed* claim may constitute a good accord and satisfaction if received in discharge of the whole.

The writer of the annotation in 112 A. L. R. 1221, 1223, et seq. says there is a conflict of authority with a "fairly even division" and that a "majority rule cannot be stated with any degree of assurance that it is correct." He says the reason for one rule is "that a payment by a debtor of what he admits to be due is no consideration" and for the other "that a dispute as to a part of a debt makes the whole debt a disputed one so as to come within the general rule that payment of part of an unliquidated debt in full satisfaction thereof discharges the entire debt." *He lists Iowa among the states that hold such payment as sufficient basis for accord and satisfaction,* citing Schultz v. Farmers Elevator Co., supra.

Turning to the textbooks we find in 1 Am. Jur., Accord and Satisfaction, section 64, the statement:

" * * * the tendency of the later cases, evidently influenced by a desire to avoid the rigid and unjust rule of the old law, seems to be to sustain the discharge where there is a dispute as to any part of the claim made by the creditor, although the payment is only of the smaller amount which was conceded by the debtor to be due. In other words, the general rule that acceptance of a part of an indebtedness with a promise to discharge the whole is not binding does not apply where there is a dispute as to whether a larger or smaller amount is due, although the payment upon receipt of which the promise to release is made is only the smaller amount conceded to be due."

In 1 C. J. S., Accord and Satisfaction, section 29a(2) the general rule is first stated (page 502):

"The payment of a sum admittedly due and payable furnishes no consideration for the discharge of an *additional and distinct* amount or item of liability, and does not effect an accord and satisfaction thereof." (Italics supplied.)

The text then discusses the proposition as applying to divisible or separable claims and adds this caution (page 504):

"It is to be noted that a transaction of this character is

clearly distinguishable from one in which the *whole* of a claim or demand is in dispute, and there is paid and received, in settlement, the amount which the debtor believes or concedes to be due, or is willing to pay, although it is less than the creditor claims; in the latter instance, as elsewhere appears, a good accord and satisfaction is effected (infra §32)." (Italics supplied.)

And at section 32 of the same article the text writer makes the distinction:

"The payment and acceptance of a lesser amount than is claimed by a creditor may constitute a good accord and satisfaction of the whole claim, where it is unliquidated or in dispute, even though the creditor was not bound to make any reduction in his claim, or the amount paid is no more than the debtor concedes to be due." And later at pages 513, 514, of the same section: "* * * there is a plain distinction in theory, although one sometimes difficult to apply in practice, between the payment of what the debtor conceives to be the correct amount due where the claim *as a whole* is disputed or unliquidated, and the payment of what is concededly and indisputably due in an attempt to satisfy an *additional* and distinct liability which, *alone,* is the subject of a dispute between the parties." (Italics supplied.)

The distinction pointed out in these quotations from the textbook writers will explain some of the apparently contradictory judicial pronouncements and will reconcile many, though not all, apparently conflicting decisions.

As said by Judge Learned Hand in Matlack Coal & Iron Corp. v. New York Quebracho Extract Co., 2 Cir., N. Y., 30 F. 2d 275, 276:

"The situation is plain when two claims arise under separate contracts, since it cannot be regarded as a detriment to pay what is concededly due under a promise which can be separately enforced. * * * The contrary is also plain, when the payment is a part of what is due, though concededly due, under a single promise, since the promisor cannot be said to be under separate obligation to pay the conceded part."

There is a clear difference between cases where the claim is composed of separable items and those where the indebtedness is single and incurred in a single transaction. See Lindenman v. Norwalk, 185 N. Y. Supp. 356, 357. In the former instance the payment of items admittedly due would not form the basis of an accord and satisfaction of the balance. But in the latter the phrase "amount admittedly due in any event" could not refer to so much of the entire claim as the debtor conceded to be due since the claim *as a whole* was unliquidated. Lindenman v. Norwalk, supra. See, also, Wilson v. Palo Alto County, 65 Iowa 18, 24, 21 N. W. 175, where the same clear distinction is drawn between separable and inseparable claims.

In the instant case there was one indivisible claim. One amount only could be due. Which one, if either, depended on undetermined facts. The majority opinion speaks of "two liabilities under the contract" and adds: "They were distinct and separate." This is a mistake. There were not "two liabilities" but only one. The question was, which? If the sum due was in fact $500 there could be no liability for an additional $4,500. If $5,000 was due it represented an indivisible sum. There was no $500 item included in it. *Payment and acceptance of $500 in settlement was completely inconsistent with any theory of it being a part payment upon the larger amount.*

Nor was the $500 a liquidated sum. It was not agreed upon by the parties or fixed by operation of law. Greenlee v. Mosnat, supra. *It could only become liquidated by the accord* and then not as a *part*, but in *lieu*, of the larger amount. Defendant by tendering the payment stated the amount it considered to be due. It was in that sense an admission. That tender and admission however did not make the tendered amount "liquidated." But when the beneficiary accepted the tender she relinquished any right to demand the full face of the contract and the accord became complete.

In Ferguson v. Grand Lodge, supra, defendant claimed an accord and satisfaction by reason of its payment and plaintiff's acceptance of the sum defendant contended was the amount due under the certificate and bylaws of the society. We upheld the claim.

Plaintiff argued (*as appellant does here*): "*defendant always admitted that it owed the plaintiff just what it paid her,*" *and that such payment therefore could not constitute a consideration for the claimed settlement* "*there being no dispute as to the amount paid.*" We said:

"This contention would be sound if plaintiff had conceded that $1.181 [the amount paid] was the correct amount owed. This she did not do; but, as stated, claimed the full amount of the certificate, $2,000." (174 Iowa, at page 74, 156 N. W., page 180.)

This case is conclusive of appellant's argument here. Assuming, as we should under the authorities and this record, that the original claim was unliquidated, we should hold there was a good consideration for accord and satisfaction by payment of the lesser amount when intentionally so made and received.

Any apparent conflict in our own cases is readily resolved: If a claim is composed of separable items or elements not inconsistent with each other (whether arising under different contracts or separable provisions of one contract) payment of one admitted separable item or part would not be sufficient consideration for a settlement of the disputed items. But if the claim is indivisible and unliquidated because there is uncertainty as to *which of two sums is due,* an admission of liability for, and tender by the debtor of, the lesser amount in settlement of the whole will if accepted be an accord and settlement supported by a good consideration.

I have cited authorities that support the reasoning which I believe sound. The conclusion I have reached seems to have been the rule in Iowa until now. The decision of the majority is an invitation rather than a rebuke to bad faith in matters of this kind. I would affirm the decision of the trial court.

HALE and MANTZ, JJ., join in this dissent.